THE STATE v. TOMASITZ, *Appellant.*

Division Two, May 17, 1898.

1. **Practice**: NEWLY DISCOVERED EVIDENCE: AFFIDAVIT. A motion for new trial on the ground of newly discovered evidence must be supported by the affidavit of the defendant, setting forth the evidence, when it first came to his knowledge, and the name of the witness by whom he could prove it, *and,* also, by the affidavit of the witness, setting forth the facts that he would testify to on another trial.

2. ————: NUMBER OF INSTRUCTIONS. As few instructions as possible to cover every feature of the case should be given.

3. ————: MURDER IN SECOND DEGREE: INSANITY. Where the defendant is clearly guilty of murder in the first degree or of no offense at all, no instruction for murder in the second degree should be given. Where the only defense is insanity, no instruction for murder in the second degree should be given.

4. **Appellate Practice**: REMARKS OF PROSECUTING ATTORNEY. An assignment of error that the court did not instruct the jury to disregard improper remarks of the prosecuting attorney, can not be considered by the appellate court unless it can be ascertained from the bill of exceptions or otherwise what the remarks were, and that such an instruction was asked at the proper time.

5. ————: JUROR: CHALLENGE. A statement in the motion for a new trial that the court erred in refusing to sustain defendant's challenge to a juror whose name is not given in the motion, will be disregarded on appeal.

6. **Murder**: INSANITY: CONFLICTING EVIDENCE. Where the evidence, although very conflicting, is amply sufficient to support a verdict that defendant was sane and knew the nature of the crime which he does not deny having committed, the judgment will not be reversed on the ground that it is contrary to the evidence.

*Appeal from St. Louis City Circuit Court.*—HON. WILLIAM ZACHRITZ, Judge.

AFFIRMED.

*John C. Robertson* for appellant.

*Edward C. Crow*, Attorney-General, *Sam B. Jeffries*, Assistant Attorney-General, and *W. W. Graves* for the State.

(1) The instructions given cover all theories of the case and have been often approved by this court. *State v. Duestrow*, 137 Mo. 44. (2) There was no error in refusing to instruct for murder in the second degree. Under all the evidence the defendant was either guilty of murder in the first degree or was excusable by reason of his insanity. (3) The motion argues improper remarks upon the part of the State's counsel, but as they are not preserved in the bill of exceptions, there is nothing for this court to review upon that proposition. *State v. Avery*, 113 Mo. 475. (4) The court's rulings as to the challenges made to jurors were correct. *State v. Williamson*, 106 Mo. 162; *State v. Duffy*, 124 Mo. 1; *State v. Punshon*, 133 Mo. 44. (5) The verdict is amply sustained by the record. Insanity was the only defense. Upon this the evidence was conflicting, but largely preponderating in favor of the State, and the jury has passed upon the question. (6) This record, though lengthy, is an exceptionally clear one, and there can be no question as to the defendant having had a fair trial.

BURGESS, J.—Defendant was convicted in the circuit court of the city of St. Louis of murder in the first degree and his punishment fixed accordingly, for having shot to death with a pistol at said city on the sixth day of April, 1897, one Annie Rausch. He appealed. The defense was insanity.

The facts in this case show that the defendant had been a suitor of the deceased for about a year before the homicide, and according to his statements they were engaged to be married. She lived with her

father, August Herman Rausch, at 2314 Scott avenue, in said city. Her father had requested defendant to stop calling upon her. On the evening of April 6, 1897, defendant took the deceased to the house of a friend, Mrs. Anna Hohenadle, who resided on Papin street. They arrived there a little before 6 o'clock. When they arrived at Mrs. Hohenadle's she opened the door and let them in, and defendant walked on through the front room, and into another room. Deceased stopped in the front room. When defendant went into the second room he opened a bureau drawer, from which he took a pistol belonging to the husband of Mrs. Hohenadle and was about to put it in his pocket, but she took it away from him. Deceased then ran out at the front door, and defendant ran after her, overtook and brought her back to the house. Mrs. Hohenadle admitted deceased but refused to let the defendant come into the house. Mrs. Hohenadle then went to her kitchen, and shortly thereafter deceased went into the kitchen where she was, and a few minutes still later defendant went around to the kitchen also. He was then crying. Mrs. Hohenadle testified that she then locked the door to keep him out; that shortly after 6 o'clock her husband came home; that the defendant was still on the outside crying, and wanted in; that he said he wanted to see his girl and kept crying; that her husband permitted the defendant to come into the house; that after he came in he was sitting upon the deceased's lap crying; that while so situated he asked her if she would marry him; that deceased told him that he must go away and did not answer him; that they remained in the house about an hour; that deceased asked witness to take her home, and witness told her that she would after supper; that after supper was over she and the deceased started for the home of deceased, and defendant followed; that

she was on the outside of the walk, the deceased in the middle and the defendant on the inside; that in this manner they walked until they reached Twenty-first street; that defendant said very little, "he only cried." Upon reaching Twenty-second street he asked deceased if she would marry him; she said no; he then asked her if he could go into the house with her, and she said no; and said that she would have him arrested; he said, "that's the last night of us both," and then shot; the girl ran across the street and fell. The defendant after shooting the girl ran away. Upon cross-examination this witness said that when defendant was getting her husband's revolver his eyes looked wild, and he looked like he was very much excited; that he had a wild expression about him when he came back to her house; that the residence of deceased was on Scott avenue and the residence of the witness on Papin street; that the deceased looked different that evening from what he did at other times; that "he was kind of wild-looking."

Defendant fired three shots. The first shot was fired at deceased when within one foot of her. It entered to the left of the spinal column, about in the region of the tenth dorsal vertebra, and entered the spinal column, producing cerebro-spinal meningitis. When the bullet struck deceased she fell on the sidewalk, and being unable to walk she was carried to her father's house on Scott avenue, and remained there until the next day when she was taken to the Baptist Hospital where she died from the effects of the wound inflicted by defendant, on the seventh day of May, 1897. While defendant fired three shots at the time of the homicide it was not definitely shown that he fired more than one of them at deceased. Immediately after the shooting he ran away, and was in hiding for several days, when he surrendered to the officers. The defense

introduced evidence tending to show that he was insane at the time of the homicide, which was rebutted by the State.   This is the principal issue involved in the case.

I.   Among the grounds assigned in the motion for a new trial, are, *first*, that the court admitted illegal and incompetent testimony offered by the State; *second*, that it excluded competent and legal testimony offered by defendant.   But these contentions find no support in the record, as it nowhere appears therefrom, in so far as we have been able to discover, that the court admitted illegal or incompetent testimony on the part of the State, or that it excluded competent and legal testimony offered by defendant. There does not seem to be any merit in these contentions.

II.   Another ground upon which the motion for a new trial is predicated, is "for newly discovered evidence," but this ground was not supported by the affidavit of the defendant setting forth the newly discovered evidence, when it first came to his knowledge and the name of the witness by whom he could prove the facts, nor by the affidavit of the witness setting forth the facts that he would testify to on another trial, as required under such circumstances.   *State v. Miller,* *ante,* p. 26, and authorities cited.

III.   There was no error committed by the court in instructing the jury on the question of insanity. The instruction upon this feature of the case was very elaborate and covered every phase of the case.   The most serious objection that can be urged against it is its length, of which no complaint was made in the motion for a new trial.   But we do not mean to be understood that such an objection would have been available if made.   The much better practice is to give as few instructions as possible, so that they cover every feature of the case.

IV.   Nor did the court err in not instructing the jury for murder in the second degree.   There was no evidence whatever to warrant such an instruction.   The offense was either murder in the first degree, or no offense at all.   If the defendant was sane at the time of the commission of the homicide he was guilty of a willful, deliberate and premeditated murder.   Upon the other hand if he was insane at the time, so that he did not know the nature of the crime, he was not guilty of any offense.   These were questions for the consideration of the jury, under the instruction of the court.

V.   It was also asserted that the court committed error in refusing to instruct the jury to pay no attention to certain remarks of the circuit attorney, which were objected to and excepted to at the time.   We are not advised by this general assignment what remarks of the circuit attorney were objected to, nor have we any means of ascertaining.   Moreover it does not appear that any such instruction was asked by the defendant, or that the attention of the court was called to its failure to do so at the proper time.   *State v. Cantlin*, 118 Mo. 100; *State v. DeMosse*, 98 Mo. 344; *State v. Foster*, 115 Mo. 448; *State v. Nickens*, 122 Mo. 607.

VI.   It was also asserted in the motion for a new trial that the court erred in refusing to sustain defendant's challenge to a juror whose name is not given in the motion.   We are therefore entirely at sea as to what juror was intended to be embraced in the motion, and must disregard this contention.

VII.   Another cause assigned in the motion, is that the verdict is contrary to the evidence.   There was no question but that defendant committed homicide.   It was not denied by him, so that the only real issue before the jury was as to the condition of his mind at the time, that is, whether or not he was insane.   Upon this question the evidence was very con-

flicting but was amply sufficient to support the verdict. This court will not reverse the judgment under such circumstances.

VIII. In the motion in arrest it is said that the indictment charges no offense under the laws of the State. This contention is likewise without merit. The indictment is according to approved forms, and free from objection. It contains all averments necessary in an indictment for murder in the. first degree.

Finding no reversible error in the record, we affirm the judgment and direct the sentence to be executed. GANTT, P. J., and SHERWOOD, J., concur.