## THE STATE v. FRANK SHELTON, Appellant.

**Division Two, November 23, 1909.**

1. **INFORMATION: Form: With Ax.**  The form of the information, wherein it is charged that the homicide was committed with an ax, "which they, the said Frank Shelton and Henry Killion in their hands then and there had and held," is not to be commended, but such defect does not render it fatally defective. It "does not tend to the prejudice of the substantial rights of the defendant upon the merits."

2. ————: **Preliminary Hearing: Waiver: Finding of Fact.** Where the justice's transcript recites that defendant waived a preliminary hearing, and defendant introduced evidence that he neither waived nor was given a preliminary hearing, a finding of fact by the trial court that he had waived it, will not be disturbed on appeal.

3. **BILL OF EXCEPTIONS: Extending Time: Nunc Pro Tunc Order.**  The action of the trial court after the lapse of two terms, without any notice to the prosecuting attorney, and without any showing by memorandum made by the court, either upon its docket or upon the record, that an error had been committed in the preservation of the record, in entering a *nunc pro tunc* order authorizing the filing of a bill of exceptions, is not approved.  But in this case the doubt as to the sufficiency of the disclosures of the record to authorize the *nunc pro tunc* order extending the time for filing, is resolved in favor of defendant.

4. **JURORS: Panel: Qualifications: No Assignment in Motion for New Trial.** Any complaint concerning the examination and qualifications of the panel of jurors cannot be considered on appeal unless the appellant incorporates the complaint as one of the grounds in his motion for a new trial.

5. **MURDER: Robbery: Evidence That Defendant Had Money.** It is not improper to permit the State to supplement its evidence indicating that robbery was the motive which prompted the killing, with testimony that deceased usually had money in his possession.

6. **ACCOMPLICE: Competency to Testify.** An accomplice who was jointly indicted with defendant, and to whom a severance has been granted, and who, after objection to his testifying was interposed, has pleaded guilty to manslaughter in the fourth degree, sentence being reserved, is a competent witness against defendant in the murder trial.

7. ———: ———: **Promise of Immunity.** Any inducements held out to an accomplice, and the fact that he admits he is an accomplice, are things which affect only his credibility, but not his competency to testify.

8. **ALIBI: Instruction.** An instruction which tells the jury that "unless you find and believe from all the facts and circumstances given in evidence the presence of defendant at the place of the alleged murder, and his guilt beyond a reasonable doubt, you should acquit him," sufficiently covers the defense of *alibi*, and renders unnecessary the one asked by defendant.

9. **CIRCUMSTANTIAL EVIDENCE: Instruction.** The instruction on the subject of circumstantial evidence, set out in the opinion, declared the law in substantial harmony with the uniform holdings of this court.

10. **CREDIBILITY OF WITNESSES: Instruction.** The instruction, set out in the opinion, on the subject of the credibility of witnesses and the weight to be attached to their testimony, was sufficiently full and properly declared the law.

11. ———: **Accomplice: Refusing Defendant's Instruction: Argumentative.** The court having instructed the jury that the testimony of an accomplice, uncorroborated as to matters material to the issues, "ought to be received with great caution by the jury, and the jury ought to be fully satisfied of its truth before they convict defendant on such testimony," and that "you are at liberty to convict defendant on the uncorroborated testimony of an accomplice alone" if you believe his testimony to be true, did not err in refusing to instruct that "if you believe the testimony of the accomplice was obtained by threats and through fear from or by reason of any promise from the officers of the

court or prosecuting attorney, you should weigh his testimony with great care and caution, as evidence obtained in this manner shows the vital interest of such codefendant, and could not be taken as his free and voluntary statement, given after he had been cautioned that his statements may be used against him." The one given fully covered the subject, and the one refused was argumentative.

12. **MURDER: Punishment: No Instruction.** Where the jury found defendant guilty of murder in the first degree and fixed his punishment at life imprisonment as the law authorized them to do, no injury was done defendant by the fact that the instruction contained no direction as to what punishment they might inflict in case they found him guilty of murder in that degree.

13. ————: **Sufficiency of Evidence.** It is the exclusive province of the jury to determine the weight of the testimony; and though a conviction may rest largely upon the testimony of an accomplice, yet if there is sufficient substantial evidence, if true, to establish defendant's guilt, the appellate court will not undertake to decide whether or not it is true, but leave that question to the jury to decide.

Appeal from Christian Circuit Court.—*Hon. John T. Moore,* Judge.

AFFIRMED.

*Elliott W. Major,* Attorney-General, and *James T. Blair,* Assistant Attorney-General, for the State.

(1) (a) The form of the amended information upon which the defendant was tried, conforms to the precedents in like cases. State v. Ferguson, 162 Mo. 671. (b) The allegation that the murder was committed with an ax, "which they then and there in their hands held" is not the best form, but does not render the indictment fatally defective. State v. Dalton, 27 Mo. 14; State v. Payton, 90 Mo. 225; State v. Grimes, 29 Mo. App. 471. (c) The motion to quash, in respect to this feature of the information, merely alleged that "the information fails to state a cause of action or charge defendant with any crime under the laws of the State of Missouri." The Statute of Jeofails is as appli-

cable before verdict as after verdict. Sec. 2535, R. S. 1899; Sec. 2481, R. S. 1899. And while the ground of the motion mentioned is sufficiently specific (State v. Weeks, 77 Mo. 496), yet it is not true in fact that the information charged no offense. (See above authorities.) Other objections to the form of the information, etc., must be specified in the motion if they are to be considered here. Sec. 2532, R. S. 1899. 2. The motion to quash also charged that defendant had not been accorded a preliminary examination, nor yet a right to one, and that, therefore, the information should be quashed. (a) The transcript of the justice of the peace sent up with the record, shows that this statement of the motion was not true in fact. (b) On defendant's effort to contradict the transcript of the justice, and show that, despite its recitals, defendant, Shelton, neither had nor waived a preliminary examination, the trial court heard evidence, *pro* and *con,* and found the fact against defendant. This court will not disturb that finding. State v. Hathorn, 166 Mo. 241; State v. Hunter, 181 Mo. 333; State v. Gordon, 196 Mo. 198. (2) According to Killion's testimony, defendant's motive was robbery. Defendant declared immediately after killing Bowen that he "got the money." It was not improper to supplement this evidence with proof that Bowen usually had money in his possession. State v. Donnelly, 130 Mo. 651; State v. Jackson, 95 Mo. 652. After his plea of guilty, Killion was competent. This is the customary method of securing the testimony of a joint defendant. State v. Minor, 117 Mo. 305; State v. Myers, 198 Mo. 252; State v. Beaucleigh, 92 Mo. 493; State v. Walker, 98 Mo. 103. The inducements, if any, held out to Killion, affected only his credibility and not his competency. State v. Riney, 137 Mo. 104; State v. Myers, 198 Mo. 252; State v. Wigger, 196 Mo. 97. (3) 1. The first instruction given, as to the defense of an alibi, is a rescript of one approved by this court. State v. Sanders, 106 Mo. 195.

2. Instruction 6, as to circumstantial evidence, is not subject to criticism. State v. Avery, 113 Mo. 494; State v. Taylor, 134 Mo. 151. 3. Instruction 7 as to the weight to be given the testimony of an accomplice, follows the precedents. State v. Tobie, 141 Mo. 560; State v. Crab, 121 Mo. 565; State v. Black, 143 Mo. 171; State v. Sprague, 149 Mo. 423. 4. Instruction 8 as to the credibility of the witnesses, is an approved form. State v. McCarver, 194 Mo. 732; State v. Bond, 191 Mo. 561. (4) 1. The form of instruction 10, as requested is bad. The latter portion of it a mere comment on the evidence. It was argumentative. In the form requested, it was properly refused in any event. State v. Heath, 221 Mo. 565. 2. The accomplice who turns State's evidence is universally assumed to do so in order to escape the penalty, or a portion of it. "The implied offer of immunity is recognized by all courts." It has become a sort of equitable right. Whisky cases, 99 U. S. 599; Camron v. State, 32 Tex. Crim. Apps. 182; State v. Lyon, 81 N. C. 602. The hope of leniency is, therefore, the element which necessitates the usual cautionary instruction given in this case, and so many times approved by this court. It covered the ground included in instruction No. 10, requested by defendant —and more. It was not necessary for the trial court to argue the matter with the jury and point out a particular reason for the cautionary instruction, as defendant requested that court to do. The cautionary instruction given and that as to the credibility of the witnesses, met all reasonable requirements in this connection.

FOX, J.—This cause is now before this court upon appeal from a judgment of the circuit court of Christian county, Missouri, convicting the defendant of murder of the first degree. The amended information, upon which defendant was tried, and which was duly verified, was filed by the prosecuting attorney in the

circuit court of Christian county on the 25th of August, 1908. Omitting formal parts, the charge upon which defendant was convicted, was thus stated in the information.

"Fred W. Barrett, prosecuting attorney within and for the county of Christian, in the State of Missouri, for an amended information, informs the court under his official oath and upon his best information and belief that Frank Shelton and Henry Killion on or about the 12th day of May, 1908, in the said county of Christian, in the State of Missouri, in and upon the body of one William Bowen, then and there being, feloniously, wilfully, deliberately, premeditatedly and of their malice aforethought did make an assault, and with a dangerous and deadly weapon, to-wit, an ax, of the weight of three pounds, which they, the said Frank Shelton and Henry Killion in their hands then and there had and held, him, the said William Bowen, then and there feloniously, on purpose and of their malice aforethought, wilfully, deliberately, premeditatedly did assault, strike, beat and wound; and with the ax aforesaid, then and there, feloniously, on purpose and of their malice aforethought, wilfully, deliberately and premeditatedly, did assault, strike, beat and wound him, the said William Bowen, in and upon the head of him the said William Bowen, giving him, the said William Bowen with the dangerous and deadly weapon aforesaid, to-wit, the ax aforesaid, in and upon the head of him the said William Bowen one mortal wound of the length of two inches and the width of one-half inch and the depth of one inch of which said mortal wound the said William Bowen then and there instantly died.

"And the said Fred W. Barrett, the prosecuting attorney aforesaid, under his oath of office aforesaid, does say that the said Frank Shelton and Henry Killion, him, the said William Bowen in the manner

aforesaid, and by the means aforesaid, at the time and
place aforesaid, feloniously, wilfully, deliberately, pre-
meditatedly on purpose and of their malice afore-
thought did kill and murder, contrary to the form of
the statute in which cases made and provided and
against the peace and dignity of the State.''

The evidence developed upon the trial of this
cause upon the part of the State substantially tended
to show that the deceased, William Bowen, lived about
two miles south of Nixa, in Christian county. He was
sixty-five or seventy years old, and was a huckster by
trade, collecting poultry and produce in the vicinity of
his home and making weekly trips to Springfield for
the purpose of marketing his wares. Deceased was
accustomed to carry sufficient money to transact his
business, a considerable sum being required to pur-
chase the produce which he hauled to Springfield on his
weekly trips. The fact that he usually had money in
his possession seems to have been known to a number
of persons, including appellant's co-indictee. Deceased
was last seen alive about dark on Tuesday, the 12th
day of May, 1908, returning to his home after a trip to
Springfield. Deceased's neighbors, attracted by the
evident neglect from which his horses were suffering,
on Thursday, May 14th, visited deceased's premises
and discovered the body. It lay, face downward, on
the floor in a pool of blood. A bloody ax lay near the
body. There was blood upon a trunk and chair, and
the former gave evidence of having been rifled. Death
was caused by a blow upon the head, inflicted by a
blunt instrument, which shattered the skull. The
wound was necessarily and almost instantaneously fa-
tal. Bowen had been dead thirty-six hours, or more,
when his body was discovered. On Tuesday night
preceding the discovery of the body, defendant and his
co-indictee, Killion, and one Stewart, all of whom lived
or worked in the vicinity of Bowen's home, went fish-
ing. Soon after 9 p. m., Stewart left appellant and

Killion and went home; the latter stating at the time that he and appellant were going to an old pond near by and continue fishing. They retained Stewart's seine and it was found in his yard the following morning.

Appellant, on Tuesday morning, had suggested to his co-defendant that they rob Bowen. After Stewart left the fishing party Tuesday night, appellant renewed his suggestion, threatening to kill young Killion unless he acceded thereto. The latter finally agreed to aid in appellant's enterprise and the two went to deceased's house. Appellant stationed Killion in the road near the house, approached the door, rapped upon it and was admitted by deceased. Killion testified that he then saw someone leave and re-enter the house; that he heard a "lumbering and then a groan" in the house. Soon thereafter, appellant emerged from the house, stooped and washed his hands in a rivulet at the roadside, and said to Killion, "I got the money," adding an admonition to Killion "not to tell, whatever he done." Appellant and Killion then went to the latter's home and there spent the night. Appellant offered Killion part of the money taken from deceased. After the discovery of the body, in conversation concerning the killing, appellant, when asked if he did it, replied: "I wouldn't say I didn't, but there was nobody ever seen me kill him, if I did kill him." In the same conversation, he offered one Fonville twenty dollars to leave the country, telling him that he, Fonville, was suspected. There was testimony to the effect that when appellant was arrested he said he "thought he could prove out of that;" that there was "a little blood on his shirt," and "his shoes looked like they had blood or something on them."

Appellant, after his arrest, was taken to view the body, and the officer who had him in charge testified that "he was nervous and shaky; turned white and pretty much every color a man could turn, who was guilty of a crime."

When Killion, jointly indicted with appellant, was offered as a witness by the State, objection was made to his testifying. He was then permitted to plead guilty to manslaughter in the fourth degree. Appellant, still objecting to Killion's testifying, asked and was granted permission to offer testimony as to Killion's having been promised, as an inducement to confess, a light sentence in the Reform School. The evidence offered on this head was conflicting. Counsel for appellant upon cross-examination of Henry Killion, the accomplice, sought to discredit Killion, and in addition to the cross-examination he offered in evidence a confession signed by Killion. While this signed confession of Killion, offered by counsel for appellant, tended to contradict him upon some of the matters to which he testified in his oral examination, yet as to some of the material facts this signed confession of Killion substantially agreed with his oral testimony while on the witness stand.

Defendant testified in his own behalf and substantially stated that on the Tuesday night on which Bowen was killed he went fishing as detailed by witnesses Henry Killion and Stewart, and that about 9:30 p.m. he and Killion left the pond, where they had gone after Stewart left them, and went to Killion's home; that he had two little fish in his pocket; these he put into a tub near the door, followed Killion into the house and slept there that night. He positively denied being at Bowen's house at all, and stated that the testimony of Killion regarding his connection with the killing of Bowen was absolutely false. Defendant also contradicted and denied the testimony of witness Fonville, and also denied the conversation attributed to him by witness Ball on the occasion when Ball arrested him. The defendant, as an explanation as to the blood on his shirt, said that he "might have got it from cleaning fish or popping a snake's head off." Further stated that there was no blood upon his shoes

and what was seen upon his shoes "was not blood at all, but was from a snag or something."

There was other testimony offered on the part of the defendant tending to show that the witness, Henry Killion, who was charged as an accomplice, had, about two months before the tragedy, threatened to kill Bowen, the deceased. It was drawn out in the examination on this subject that this threat on the part of Killion against Bowen resulted from Killion's father teasing him about Sabbath-breaking and suggesting that the deceased, Bowen, act as judge to pass upon young Killion's misdemeanors.

It also appeared in evidence offered by the defendant that, prior to Killion's confession, the prosecuting attorney offered him, Killion, partial immunity if "he would tell him about the killing and all about where the money was, and that Killion subsequently denied the truth of his confession."

There was other testimony offered by the defendant which tended to show that the reputation of witness Fonville for truth and veracity was bad. It also appeared in evidence that $26.71 was found in some egg cases in Bowen's house after the killing.

There was also evidence offered on the part of the appellant tending to show that a horseman who strongly resembled Shelton, appeared on the road leading from Bowen's to Killion's at "half past eight or nine o'clock, or later" on the night of the killing, and that this horseman, after inquiring as to the road to Nixa, continued up the road. Another witness testified that he saw a horseman between eleven and twelve o'clock the same night, riding rapidly northward along the Springfield road. There was other testimony offered by the defendant which contradicted the State's evidence as to the time Henry Killion and the defendant reached the Killion home on the night of the tragedy.

The State, in rebuttal, offered proof tending to show contradictory statements made by some of appellant's witnesses in reference to the time when appellant and Killion reached Killion's house.

This sufficiently indicates the nature and character of the testimony upon which this case was submitted to the jury, at least it is entirely sufficient to enable us to dispose of the legal propositions presented by the record.

At the close of the evidence the court instructed the jury upon the various subjects to which the testimony was applicable. We deem it unnecessary to here reproduce all the instructions given or refused, but will, during the course of the opinion, give them such attention as they require. The cause was then submitted to the jury, and they returned their verdict finding the defendant guilty as charged and fixed his punishment at life imprisonment in the penitentiary of this State. Timely motions for new trial and in arrest of judgment were filed and by the court taken up and overruled. Sentence and judgment were rendered by the court in accordance with the verdict returned, and from that judgment the defendant prosecutes this appeal, and the record is now before us for consideration.

## OPINION.

The record in this cause discloses numerous complaints on the part of the appellant upon which are predicated the reasons why the judgment should be reversed. We will give to the errors complained of such attention as we deem the importance of questions presented demand and merit.

## I.

The information sufficiently charges the offense of which the defendant was convicted. While perhaps

the form of the information, wherein it is charged that the offense was committed with an ax, "which they, the said Frank Shelton and Henry Killion in their hands then and there had and held," is not to be commended, but such defect does not render the indictment fatally effective. [State v. Dalton, 27 Mo. 13; State v. Payton, 90 Mo. 220; State v. Grimes, 29 Mo. App. 470.]

In State v. Dalton, *supra,* it was expressly ruled by this court that the manner in which the instrument is held by which the injury is inflicted is not material, and even if it was material under the common law rules of pleading it is manifestly cured by the sweeping provision of our statute, which declares that "no indictment shall be deemed invalid on account of any defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits." The rule as announced in that case was unqualifiedly approved in the later case of State v. Payton in the 90th Mo.

## II.

It is next earnestly insisted that the information upon which the defendant was tried and convicted, should have been quashed for the reason that the defendant was not afforded a preliminary examination prior to the filing of such information. Upon this proposition we find that the transcript of the justice of the peace shows that there was a waiver on the part of the defendant of a preliminary examination; but aside from this the trial court permitted learned counsel for defendant to introduce evidence tending to contradict the recitals of the transcript of the justice, for the purpose of showing that, despite the recitals of the transcript, defendant Shelton neither had nor waived a preliminary examination. Upon this inquiry the trial court heard the evidence on both sides

and found the facts against the defendant; in other words, that there had been a waiver of the preliminary examination. Upon this state of the record this court is not inclined to disturb the conclusions reached by the trial court. [State v. Hathhorn, 166 Mo. 229; State v. Hunter, 181 Mo. 316; State v. Gordon, 196 Mo. 185.]

### III.

The learned Attorney-General presents the question upon the disclosures of the record as to whether or not there is anything before this court for review save and except the record proper. It is sufficient to say upon that proposition that it is extremely doubtful as to whether or not the disclosures of the record as to the entry of the *nunc pro tunc* order extending the time for the filing of the bill of exceptions authorized the filing of such bill, yet we are disposed to resolve the doubt in favor of the defendant, but will add that we by no means approve of the action of the court, after the lapse of two terms, and without any notice to the prosecuting officer, and without any showing as to any memorandum made by the court, either upon its docket or upon the record that an error had been committed in the preservation of the record, in entering a *nunc pro tunc* order which would authorize the filing of the bill of exceptions. It follows from this that we will treat the bill of exceptions as filed within the proper time, and give to the questions preserved by such bill the attention we deem necessary.

### IV.

Appellant makes complaint concerning the examination and qualification of the panel of jurors in this cause. It is sufficient to say upon this proposition that the appellant has failed to incorporate this complaint as one of the grounds in his motion for a new trial. Whatever occurred in the trial of this cause during the

examination and qualification of the panel of jurors from which the trial panel was to be selected, must be preserved, not only in the bill of exceptions, but the court's attention must be directed to that complaint in the motion for new trial.

In State v. Tomasitz, 144 Mo. 86, it was urged that the court erred in refusing to sustain defendant's challenge to one of the jurors upon the panel. The motion for new trial called the attention of the trial court to the error complained of in refusing to sustain defendant's challenge to the juror, but failed to give the name of the juror against whom the challenge was directed, and in that case it was said by this court, speaking through Judge BURGESS, that "we are therefore entirely at sea as to what juror was intended to be embraced in the motion, and must disregard this contention."

In the case at bar the motion for new trial fails to assign any errors respecting the examination of jurors or the exceptions to those that were examined as being qualified to sit in the trial of the cause. Manifestly this complaint has not been sufficiently preserved to authorize this court to review the action of the trial court upon that subject. This cause presents a much stronger reason for declining to consider the complaint than the case above referred to, for in this case the motion for new trial is absolutely silent as to any complaint respecting the examination and qualification of jurors.

## V.

We have examined in detail the evidence disclosed by the record and the objections and exceptions preserved during the progress of the trial interposed by the appellant to the introduction of such evidence. It is sufficient to say concerning the rulings of the court upon the admission of evidence that we find no

substantial error, at least no such error as would authorize the reversal of this judgment.

During the examination of witness Slane, the State, by her counsel, inquired whether or not he knew anything about the deceased having money and how he kept it along about the time he was killed. There was an objection to this testimony upon the ground that it did not appear to have any connection with the defendant. It must, however, not be overlooked that during the progress of the trial there was testimony tending to show that the motive which prompted the killing of Mr. Bowen, the deceased, was that of robbery. With that view of the case we have reached the conclusion that it was not improper to supplement the evidence indicating that robbery was the motive which prompted the killing with the proof that the deceased usually had money in his possession.

In State v. Donnelly, 130 Mo. l. c. 651, it was ruled by this court that there was no error in permitting a witness to testify to the finding of the pocketbook of the deceased near the spot where he was found lying unconscious, a day or two next thereafter; and also that it was not error to permit witnesses to testify that deceased had money on his person the day before his death. This testimony was in that case deemed appropriate for the purpose of supplementing the State's evidence indicating that the motive in the commission of the crime was that of robbery. There was no error in the admission of this testimony offered by the State along this line in the case at bar, and the action of the court in denying the motion of appellant's counsel to strike out all of Slane's testimony upon this subject was entirely proper.

## VI.

Learned counsel for appellant earnestly insists that the court committed error in permitting the admitted accomplice of the defendant, Henry Killion, to

State v. Shelton.

testify against the defendant as a witness. The record upon this proposition discloses that the State offered Henry Killion, the accomplice, as a witness. When this offer was made Killion was not on trial and had not pleaded to the information; however, a severance had been granted. Defendant made the further objection to Killion testifying on the ground that he had neither pleaded guilty nor been convicted, and being indicted jointly with appellant he could not therefore testify against him. Upon this objection being made, the accomplice, Killion, by his attorney, as is disclosed by the bill of exceptions, then pleaded guilty to manslaughter in the fourth degree. Counsel for defendant then interposed an objection to Killion testifying in the case for the following reasons: First: Because he had confessed the crime in writing; second, that the prosecuting attorney had agreed with Killion's counsel that if he would turn State's evidence, he might plead guilty to manslaughter in fourth degree and not be prosecuted for murder; third, that Killion made the confession and pleaded guilty by reason of hope and persuasion; and fourth, because Killion was jointly indicted with the defendant. It further appears from the record that after some controversy, defendant, through his counsel, suggested to the court that the jury be withdrawn, and the court then proceeded to make a preliminary examination as to whether he would permit this witness to testify. In the jury's absence defendant introduced evidence tending to show that the prosecuting attorney, when Killion was first arrested, said to him, "If you will tell this straight, I know you are not, I will see that you go to the Reform School, while if you don't I will see that your neck breaks." The prosecuting attorney, in this preliminary examination, testified that he promised Killion partial immunity if he would "tell where the money was, but he never made him any promise to get him to tell how this thing was done." The court

then overruled the objection as to Killion's compe-
tency and the defendant duly preserved his exceptions
to the action of the court. The jury was recalled and
the trial proceeded. Killion, the accomplice, was in-
troduced and the defendant objected to his testifying
for the same reasons as heretofore stated. The objec-
tions as made were overruled and defendant excepted.

Upon this state of the record we are simply con-
fronted with the proposition as to whether or not this
accomplice was a competent witness. We are unable
to agree with counsel for the appellant that Killion,
the accomplice, was not a competent witness, and un-
less we are ready to overrule a long line of decisions
in this State, there is no escape from the conclusion
that the court did not commit any error in permitting
him to testify. As was said in the case of State v.
Myers, 198 Mo. 225: "It has been decided by this
court that an accomplice not jointly prosecuted with
the defendant is a competent witness for the State,"
citing in support of that announcement, State v. Umble,
115 Mo. 461; State v. Walker, 98 Mo. 95; Wharton's
Criminal Evidence, sec. 439; McKenzie v. State, 24
Ark. 636; 1 Bishop's Crim. Proc. (3 Ed.), sec. 1167;
State v. Riney, 137 Mo. l. c. 104. This proposition is
clearly settled by the provisions of the statute, section
4680, Revised Statutes 1899, which provides that "Any
person who has been convicted of a criminal offense is,
notwithstanding, a competent witness."

In the case of State v. Minor, 117 Mo. 302, it was
expressly held by this court that an accomplice jointly
indicted with the defendant on trial was, after his own
conviction, a competent witness for the State against
his codefendant on trial.

In State v. Riney, 137 Mo. 102, it was expressly
ruled that the mere fact that the witness expected
a lighter sentence for his own confessed complicity in
the crime because he had become a witness for the
State, did not affect his competency; that such fact

could only be considered in determining his credibility and the weight to be attached to his testimony. [State v. Stewart, 142 Mo. l. c. 417; State v. Black, 143 Mo. l. c. 172.] To the same effect is State v. Wigger, 196 Mo. 90. In the treatment of the proposition now under consideration, this court in that case, speaking through Judge GANTT, said: "If anything is settled in the law of this State, it is that the evidence of an accomplice who confesses his own guilty participation in a crime, is competent against his accomplice on trial for the same offense. And the credibility of such a witness is a matter for the consideration of the jury trying the case. [State v. Hill, 96 Mo. 357; State v. Williams, 149 Mo. 496; State v. Franke, 159 Mo. 535.] And it is also the accepted doctrine that the evidence of an accomplice, even though uncorroborated, is sufficient to sustain a conviction if believed by the jury. [State v. Williamson, 106 Mo. 162; State v. Black, 143 Mo. 166; State v. Tobie, 141 Mo. l. c. 561; State v. Marcks, 140 Mo. 656; State v. Harkins, 100 Mo. 666.]" In further treating of this proposition in the Wigger case, this court also said: "The failure of the State to produce the other witnesses to corroborate the testimony of the accomplice could have operated only against the State, and was a legitimate subject for discussion before the jury, but would not authorize this court, which has not the opportunity of seeing and hearing the witness testify, to interfere with the verdict of the jury which did see and hear the witness, and observe his manner of testifying, as well also the manner and testimony of the defendant and his witnesses. Accordingly, it must be ruled that the court did not err in submitting the evidence to the jury."

We have thus indicated the rules of law applicable to this proposition that have been uniformly announced by this court. As heretofore stated, the record in this case discloses that the defendant and the accomplice, Killion, were jointly indicted; that

there was a severance and before the accomplice testified in the cause he entered his plea of guilty to manslaughter in the fourth degree. Upon the entering of such plea of guilty and the disposition of his case, clearly, if the rules as heretofore suggested are to be longer followed, he was a competent witness against the defendant in the case at bar. Any inducements held out to the accomplice Killion, and the fact that he admitted that he was an accomplice in the perpetration of this crime, are questions which affect only his credibility and the weight to be attached to his testimony, which are matters for the consideration of the jury; but under the well-settled rules of law announced in an unbroken line of decisions in this State it does not affect his competency as a witness. Upon this proposition the ruling must be adverse to the contention of learned counsel for appellant.

## VII.

This leads us to the errors complained of by the appellant respecting the declarations of law given by the court in submitting the cause to the jury. The record before us discloses that at the close of the evidence defendant, through his counsel, moved the court to instruct the jury on all points of law in this case, and especially upon the law of an alibi, the use of the evidence of a codefendant and his confession, also on the law of circumstantial evidence and on the impeachment of witnesses. The record then discloses that the court instructed the jury and that the defendant preserved his exceptions to the instructions given, and also excepted to the refusal of instructions offered by the defendant, but there is an entire absence from the record of any exceptions to the court's failure, if any, to instruct upon the subjects embraced in the motion above referred to; however, in our opinion the instructions of the court fully covered the subjects to which counsel for the defendant directed its atten-

tion. Upon the subject of an alibi, to which the court's attention was directed by the defendant in his motion, the court instructed the jury as follows:

"Gentlemen of the jury: Unless you find and believe from all the facts and circumstances given in evidence the presence of defendant at the place of the alleged murder, and his guilt beyond a reasonable doubt, you should acquit him."

It was expressly held by this court in State v. Sanders, 106 Mo. 188, that an instruction substantially the same as this sufficiently covered the defense of alibi and rendered the one asked by the defendant unnecessary.

Upon the testimony of an accomplice, the court, in our opinion, by instruction numbered 7, directed the jury substantially in accordance with the uniform rulings of this court upon that subject. This instruction was as follows: "Gentlemen of the jury, the court instructs you that the testimony of an accomplice in the crime, that is, a person who actually commits or participates in the crime, when not corroborated by some person or persons not implicated in the crime, as to matters material to the issues, that is, matters connecting the defendant with the commission of the crime as charged against him, ought to be received with great caution by the jury, and the jury ought to be fully satisfied of its truth before they should convict defendant on such testimony. The court further instructs the jury that you are at liberty to convict the defendant, Frank Shelton, on the uncorroborated testimony of an accomplice alone, if you believe the statements as given by such accomplice in his testimony to be true; if you further believe that the state of facts sworn to by such witness, if any, will establish the guilt of the defendant."

Upon the subject of circumstantial evidence, in our opinion, the court by instruction numbered 6, declared the law substantially in harmony with the uni-

form holdings by this court. That instruction was as follows: "Gentlemen of the jury, the State in this case seeks to some extent to convict the defendant of the crime charged on circumstantial evidence, that is, there is no evidence by any witness that saw the fatal blow struck. Evidence is of two kinds, direct and circumstantial; circumstantial evidence is proof of certain facts and circumstances in a certain case in which the jury may infer other and connected facts which usually and reasonably follow according to the common experience of mankind; crime may be proven by circumstantial evidence as well as by direct testimony of eye witnesses, but the facts and circumstances in evidence should be consistent with each other, and with the guilt of the defendant, and inconsistent with any reasonable theory of defendant's innocence."

Upon the question of the credibility of witnesses and the weight to be attached to their testimony, to which the attention of the court was directed by defendant's counsel, that subject was entirely and properly covered by instruction numbered 8 given to the jury by the court. We deem it unnecessary to reproduce the instruction in full, but it will suffice to say that it substantially told the jury that they were the sole judges of the credibility of the witnesses and the weight and value of their testimony; that in determining such credit, weight and value to be attached to the testimony of any witness the jury should take into consideration the character of the witness, his or her manner on the stand and of testifying, his or her interest, if any, in the result of the case; his or her relation to or feeling for the defendant or the deceased; the probability of his or her statement, as well as all other facts and circumstances detailed in evidence; and were finally told that if they believed any witness had wilfully and knowingly sworn falsely to any material fact in the case, they were at liberty to disregard all or any part of such witness's testimony.

Manifestly the directions to the jury were sufficiently full upon that subject to properly guide them in considering the question treated of by the instruction.

Counsel for appellant further complains concerning the subject of instructions to the jury, that the court erroneously and improperly declined to give instruction numbered 10, requested by the defendant. This instruction was as follows: "The court instructs the jury that if you find and believe from the evidence that the evidence of Henry Killion, the codefendant of Frank Shelton, was obtained by threats and through fear from or by reason of any promise from the officers of the court or prosecuting attorney, you should weigh his evidence with great care and caution, as evidence obtained in this manner shows the vital interest of such codefendant, or accomplice, and could not be taken as a free and voluntary statement of such codefendant or accomplice given under and after such codefendant or accomplice had been cautioned that such statements may be used against him." It is sufficient to say upon that proposition that the instruction was properly refused. In our opinion instruction numbered 7, as heretofore quoted, directing the jury respecting the testimony of an accomplice, fully covered that subject, and furnished ample directions to the jury necessary to an intelligent consideration of the testimony of an accomplice and advising them of the caution with which such testimony should be received. Instruction numbered 10 as offered by the defendant, would clearly be an argument to the jury in the form of a declaration of law. It is fundamental that the court in declaring the law upon any subject should not comment upon the facts or call the jury's attention especially to particular facts developed in the testimony. The manner and means of inducing an accomplice to testify in favor of the State and the fact that he testified with a view of getting a lighter punishment, are matters of legitimate argument before

the jury, but it would manifestly be erroneous to point out those facts and say to the jury that you must specially consider these in the weighing of his testimony. The court in the instructions given upon that subject, told the jury that they ought to receive the testimony of an accomplice with great caution, and that before they convicted the defendant upon that character of testimony they ought to be fully satisfied of its truth. In developing the testimony before the jury it was legitimate and in entire harmony with appropriate cross-examination to show to the jury all the facts and circumstances which were held out as an inducement to the accomplice to testify. This was proper and a matter of legitimate argument before the jury upon that subject, but as heretofore indicated, it would be clearly erroneous to undertake to embrace in an instruction the particular facts developed in the testimony as matters of inducement for the accomplice to testify.

It is further insisted by counsel for appellant that the court in its instructions failed to designate the punishment that the jury might inflict if they found the defendant guilty of murder of the first degree. It is sufficient to say upon this proposition that the court properly instructed the jury as to the essential elements necessary to be found by the jury in order to find the defendant guilty of murder in the first degree. It is true that the court told the jury that if they should find the defendant guilty of murder of the first degree they should simply so state in their verdict. Doubtless the trial court was following the old form of instruction when there was no discretion in the jury as to the infliction of punishment for murder in the first degree. The act approved March 18, 1907, p. 235, sec. 1817, provides substantially that the jury, if they find the defendant guilty of murder of the first degree, shall decide which punishment shall be inflicted, either death or imprisonment in the penitentiary during his

natural life. The jury in the case at bar returned a verdict finding the defendant guilty of murder of the first degree, and decided in accordance with the provisions of section 1817 of the Laws of 1907, that his punishment should be fixed at imprisonment in the penitentiary during his natural life. While the court did not designate the punishment that the jury was authorized to impose, yet the jury fixed the punishment that was authorized by the law, and we are unable to see how the defendant's rights were prejudiced by reason of the failure of the court to designate the punishment. They were required, as before stated, to find every essential element necessary to constitute the offense of murder of the first degree, and they found the defendant guilty of that offense and fixed his punishment at life imprisonment, and we repeat that we are unable to see upon what theory the defendant could have been injured by reason of the failure of the court to designate the punishment.

## VIII.

Finally it is insisted by appellant that the evidence as developed upon the trial of this cause was insufficient to support the verdict. We have carefully analyzed the testimony as disclosed by the record. It was the exclusive province of the jury to determine the weight of the testimony introduced both by the State and the defendant. If they believed the testimony of the accomplice and some of the other witnesses who testified in the cause, we are of the opinion that such testimony furnished full support to the verdict returned. We are not unmindful that this conviction rests largely upon the testimony of an accomplice, but unless we have reached that point in the administration of the laws of this State that we are to depart from the uniform rules announced applicable to the testimony of an accomplice and overrule an unbroken line of decisions upon that subject,

then there can be no escape from the conclusion that at least it was a question for the jury, with all the facts before them, to pass upon the testimony of the accomplice, as well as the other witnesses, and return a verdict in accordance with the conclusions reached. The witnesses testifying in this cause were before the court and jury, and as has been repeatedly said, jurors and the courts have opportunities of judging of the credibility of the witnesses and the weight to be attached to their testimony that are not afforded an appellate court; hence, our conclusion is that the verdict of the jury should not be disturbed by reason of the claim of the insufficiency of the testimony.

We have indicated our views upon the legal propositions disclosed by the record, which results in the conclusion that there was no substantial error such as would require this court to reverse and remand this cause; therefore, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.