State v. Johnson.

---

## THE STATE v. ALFRED JOHNSON, Appellant.

### Division One, February 17, 1914.

1. **INFORMATION: Assault: With Knife: Three Defendants.** An information charging that defendant and two other persons assaulted, stabbed and cut a fourth with a knife, which they "then and there in their hands had and held," is not insufficient in that it charges a physical impossibility. It gave the defendant all the notice which the law requires of the charge upon which he would be tried.

2. **INSTRUCTIONS: Not Set Out in Transcript.** Instructions which are not set out in the transcript filed in the appellate court cannot be reviewed on appeal. Nor is that rule altered by the fact that the bill of exceptions calls for the instructions, unless they are filed by leave of court or added to the bill by *nunc pro tunc* order or the transcript amended in pursuance to some order or leave of court.

3. ———: ———: **Amendment Without Leave.** A record filed in the appellate court cannot be amended by the mere certificate of the clerk acting under no order of court. An omission of instructions from the transcript cannot be supplied by the filing in the appellate court by the clerk of the trial court, without permission, of instructions which he certifies were found deposited among the original papers of the case.

State v. Johnson.

4. **TESTIMONY: Improperly Admitted: No Assignment in Motion.** Any error in the admission of testimony, even though probably improperly admitted in rebuttal, cannot be considered on appeal, if the motion for a new trial does not call the court's attention to the admission of improper evidence.

5. **ASSAULT: Accessory: Inciting Remark: Substantial Evidence.** Four white boys were looking through a window of a negro church at a festival going on inside, at about midnight of a starlight night, when a bottle was thrown and struck and broke the window above their heads. The negroes demanded that they pay for the window, and upon their refusal, they were told to run, and three of them did, but the prosecuting witness did not, but walked to his horse, and as he was about to mount a negro named Dudley struck him in the back with a knife, inflicting a wound seventeen inches long, and the wounded man testified that just before the assault the defendant said to Dudley, "Rip him," but admitted he had only a slight acquaintance with defendant, and was not familiar with his voice; but defendant, who was one of seven negroes who stood by and was only five feet away when the assault was made, testified that after Dudley struck the blow he could see the wounded man's coat and shirt were "split open." *Held*, that it is, therefore, apparent that it was at least possible for the wounded man to recognize defendant in the starlight and with reasonable accuracy determine that it was he who told Dudley to use the knife, and a verdict of guilty of inciting the assault is not disturbed.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris*, Judge.

AFFIRMED.

*N. D. Thurmond* for appellant.

(1) It is evident by the wording of the information that the prosecuting attorney meant to charge only one of the defendants with the actual cutting. There was only one cut and it was physically impossible for one strike to be made by all three of the defendants. All three could not have held the knife in "their" hands. The charge being a physical impossibility as to all could not be and is not a specific charge as to any one of the defendants. This point is self-evident.

Therefore the information is bad and the motion in arrest should have been sustained. (2) The evidence is not sufficient to convict the defendant.

*John T. Barker,* Attorney-General, and *S. P. Howell* for the State.

(1)   The allegation in the information that the assault was committed with a knife, "which they then and there in their hands had and held," might have been stated with greater accuracy, yet by virtue of the Statute of Jeofails does not render the information fatally defective. State v. Grimes, 29 Mo. App. 470; State v. Dalton, 27 Mo. 13; State v. Shelton, 223 Mo. 128.   (2) The first two and the fifth assignments of error in defendant's motion for a new trial allege that the evidence is insufficient to sustain the verdict. Under our statute the common law distinctions between principals and accessories before the fact have been abolished.   All are made principals and may be indicted, tried, convicted and punished as such. Therefore, a person who feloniously and on purpose is present and aids and abets in the stabbing of another is equally guilty as the person who actually does the stabbing.   Sec. 4898, R. S. 1909; State v. Melvin, 166 Mo. 565; State v. Brown, 104 Mo. 365; State v. Anderson, 89 Mo. 312; State v. Herman, 117 Mo. 629; State v. Shuckman, 133 Mo. 111.   There need not be actual participation in the commission of the criminal act. If one, by his presence at the scene of crime, lends encouragement to its perpetration and is in a position and willing to render assistance if necessary to the active participant, he is in contemplation of law equally guilty with the one who physically consummates the criminal act.   State v. Orrick, 106 Mo. 120; State v. Kennedy, 177 Mo. 131; State v. Nelson, 98 Mo. 414; State v. Valle, 164 Mo. 551; 1 Wharton's Crim. Law, sec. 211a.   The common design or purpose to commit the criminal act need not be shown by direct and pos-

itive evidence. It may be deduced from attending circumstances connected with the transaction in question. State v. Walker, 98 Mo. 104; State v. Sykes, 191 Mo. 78; State v. Fields, 234 Mo. 623; State v. Spaugh, 200 Mo. 591. In view of the principles announced by the above authorities, and the testimony as detailed in our statement of the case, the evidence was amply sufficient to sustain the verdict. It was the province of the jury to judge of the credibility of the witnesses, the weight and sufficiency of the evidence. The case was submitted to the jury, and having considered the evidence under the instructions of the court, the jury found the defendant guilty as charged. There being substantial evidence to support the verdict, this court will not interfere. State v. Bostwick, 245 Mo. 483; State v. Sassaman, 214 Mo. 738; State v. Fetrick, 199 Mo. 104; State v. White, 251 Mo. 178; State v. Concelia, 250 Mo. 424.

BROWN, J.—Upon a charge of assaulting with intent to kill one Paris Craighead, defendant was convicted in the circuit court of Callaway county and appeals from a judgment fixing his punishment at three years in the penitentiary.

The evidence upon which this conviction rests runs as follows:

Craighead and three other white boys assembled in Callaway county on the night of August 18, 1912, to attend a dance. The dance did not materialize, so the four boys decided to attend a festival, held on the same night at a negro church a few miles distant. They arrived at the church about midnight, and, after tying their horses, sought to purchase some soda pop and fish at a stand outside the church. They could not obtain the soda pop and fish, the supply being exhausted.

The white boys then walked to an open window of the church and were watching the negroes inside,

some of whom were singing. At this juncture a bottle was thrown by some unknown person on the outside and struck the church window above where the white boys were standing, breaking the bottle and also the glass in the window.

Several persons came out of the church and demanded that the white boys pay for the broken window. This they declined to do, claiming they had not broken it. Some one or more of the negroes then told the white boys to leave, which they promptly did. There is some conflict in the evidence as to who told the white boys to leave; two witnesses testified that defendant gave the order.

Defendant was standing on the outside of the church when the bottle was thrown. Two of the white boys stated that the negroes told them to run, and they did run to their horses and prepared to go home.

Paris Craighead did not run, but walked to his horse. According to his testimony about seven of the negroes followed him, and, as he was preparing to mount his horse, a negro by the name of Wheeler Dudley struck him in the back with a knife, inflicting a wound extending from his shoulder to his belt—about seventeen inches long. Craighead stated that just before this assault was made defendant said to Dudley, "Rip him."

Defendant, testifying in his own behalf, corroborated the statements of Craighead at all points except in regard to the inciting remark, "Rip him," alleged to have been made by defendant to Dudley just before the crime was committed. Defendant stated that he and Pete Holland were standing about five feet from defendant when Wheeler Dudley passed between them and cut Craighead with a knife. Defendant further testified that it was a starlight night and that after the assault took place he could see that Craighead's coat and shirt were "split open," and defendant thought he was wounded. Craighead was in fact very

seriously wounded, but was able to mount his horse and ride away. Defendant denied that he said "rip him" to Dudley or encouraged said Dudley to make the assault—that he did not want to harm Craighead in any way. That he did not hear anybody say "rip him," but heard Dudley say, "I split his coat." Asked why he followed the white boys, defendant said: "I just went out there to see that they left."

Pete Holland's evidence was about the same as defendant's. He testified that he did not hear anyone say "rip him"—but that after the assault Dudley stated he had "split the white boy's coat."

One Julia Dudley testified in *rebuttal* that the day following the assault defendant called at her home, and upon loaning her his knife to pare an apple, he (defendant) remarked: "That is the knife with which I cut the white boy's coat." Defendant denied making this remark, as did one other witness who was present when it is alleged to have been made.

For reversal defendant assigns the alleged invalidity of the information; the giving of improper instructions; the admission of improper evidence; and insufficiency of evidence to support the verdict.

## OPINION.

I. The only attack upon the information is that it alleges defendant and two other persons assaulted, stabbed and cut Paris Craighead with a knife, which they "*then and there in their hands had and held,*" thus charging a physical impossibility. This alleged error has been heretofore urged against other informations, and has never been regarded as a substantial defect. [State v. Grimes, 29 Mo. App. 470; State v. Dalton, 27 Mo. 13; State v. Shelton, 223 Mo. 118, l. c. 128.] Upon the authority of the above cited cases we hold that the information in this case is sufficient. It certainly gave the de-

Information.

fendant all the notice which the law requires of the charge upon which he would be tried.

II.   Concerning the alleged errors in the instructions given for the State or by the court of its own motion, it is only necessary to say they cannot be reviewed in this appeal, for the reason that they do not appear in the transcript filed in this court.

**Instructions.**

The bill of exceptions contains a call for the instructions given on behalf of the State, but from some cause those instructions were not copied into the transcript.   No suggestion of diminution of record or attempt to amend the bill of exceptions by an order of court *nunc pro tunc* has been made; but since the submission of the case to this court, the clerk of the circuit court of Callaway county has filed here, without permission, some copies of instructions which he certifies were found deposited among the original papers in this cause.   The clerk further certifies that said instructions, of which he has thus furnished us copies, are not indorsed as either given or refused by the trial court.   It has long been the rule that a record filed in this court cannot be amended by the mere certificates of the clerk when not acting under the order of any court.   [Smith v. Railroad, 91 Mo. 58, l. c. 61; Althoff v. Transit Co., 204 Mo. 166.]

III.   The evidence of Julia Dudley was probably not admissible as rebuttal testimony, but as defendant had neglected to call the trial court's attention to the admission of improper evidence in his motion for new trial, the error (if error) cannot be reviewed here. [State v. Foley, 247 Mo. 607, l. c. 627, and cases there cited.]

**Evidence: Motion for New Trial.**

IV.   This leaves for our determination the contention that the verdict and judgment are not sup-

State v. Johnson.

ported by substantial evidence. The only direct evidence of defendant's guilt is that he en-
**Evidence Sufficient.** couraged the commission of the crime by saying to Wheeler Dudley, "Rip him," just before the latter made the assault. Defendant's counsel does not deny that his client is guilty if he told Dudley to strike Craighead with a knife. His insistence is that, all the facts considered, there is not substantial evidence that defendant did or said anything to provoke or encourage the commission of the crime by Dudley.

As Craighead, the prosecuting witness upon whose evidence the conviction is based, admitted that he had only a slight acquaintance with defendant, and was not familiar with his voice, the difficulty arises in finding that said prosecuting witness, by only such light as the stars afforded on that summer night, could be certain as to which one of the seven negroes then present made the inciting remark, "Rip him."

The defendant, who was only five feet from the prosecuting witness, testified that after Dudley struck the blow, he (defendant) could see that Craighead's coat and shirt were "split open;" so that, defendant being able to observe by the starlight that Craighead's coat and shirt were cut by Dudley's knife, it is apparent that it was at least possible for Craighead to recognize defendant by sight, and with reasonable accuracy determine that it was he who told Dudley to use the knife.

After a careful consideration of all the facts we are convinced that Craighead's ability to recognize defendant as the man who incited Dudley to make the assault was a question for the jury, and we decline to disturb their decision.

The judgment is therefore affirmed.

*Walker, P. J.,* and *Faris, J.,* concur.