THE STATE v. LEWIS BARTON, Appellant.

Division Two, November 24, 1908.

1. **SUFFICIENCY OF EVIDENCE.** Where there is substantial evidence tending to establish defendant's guilt, and evidence to the contrary, the court will not interfere with the jury's verdict of guilty. It is for the jury to pass upon the weight of the evidence.

2. **ALIBI: Instruction: Guilty Unless Absent.** Where, when all the instructions are read together, it is plain that the court required the jury to find beyond a reasonable doubt that defendant committed the offense, it is not an assumption that

defendant committed the crime to instruct the jury on the subject of alibi to the effect that if they entertain a reasonable doubt that defendant was not present at the time and place, they will acquit him. The instruction does not in effect tell the jury that unless they have a reasonable doubt of the appellant having been present at the time and place where the crime was committed they will find him guilty, without requiring them to find a crime had been committed; nevertheless, it would have been better to have modified the instruction in that respect.

3. **CIRCUMSTANTIAL EVIDENCE: Instruction: Consistent with Guilt, Etc.** Where there is no direct evidence of defendant's guilt, but the State's case consists of circumstances strongly tending to establish his guilt, it is error, in a felony case, to refuse to instruct the jury that before they can convict the defendant on circumstantial evidence alone they must find the circumstances to be consistent with defendant's guilt and inconsistent with any reasonable hypothesis of his innocence.

4. ——: ——: ——: **Crude Instruction.** And while the instruction asked is far from being a model, yet if the principle is invoked, it is the duty of the court to give a correct instruction on the subject.

Transferred from the St. Louis Court of Appeals.

REVERSED AND REMANDED.

*S. L. Clark* and *J. B. Daniel* for appellant.

(1) The court erred in refusing appellant's offered instruction on circumstantial evidence, as in this case all the evidence was circumstantial. State v. Moxley, 102 Mo. 347; State v. Woolard, 111 Mo. 248. And although the offered instruction was not properly worded, the court should have given a correct instruction on the point raised thereby. State v. Clark, 147 Mo. 20; State v. Reed, 154 Mo. 122; State v. Taylor, 118 Mo. 153; State v. Lowe, 93 Mo. 547; State v. Luke, 104 Mo. 563; State v. Rufus, 149 Mo. 406; State v. Moore, 160 Mo. 443. (2) The verdict is against the weight of the evidence.

*G. D. Sloan* and *R. I. January* for the State.

(1)   The instruction given by the court on the defense of alibi was proper and reasonable and told the jury that if they had a reasonable doubt of the presence of the defendant at the time and place where the calf was alleged to have been killed they should acquit him, but that such reasonable doubt should be a substantial doubt and not a mere possibility that he may have been at another and different place.   State v. Nueslein, 25 Mo. 123; State v. Sacre, 141 Mo. 64; State v. Cushenberry, 157 Mo. 168; State v. Jones, 153 Mo. 461.   Appellant was not entitled to an instruction on the question of alibi because his own admissions place him at the time and place where the alleged offense was said to have been committed.   State v. Thornhill, 174 Mo. 364.   (2)   It was for the jury to pass upon the weight of the evidence and this court will not disturb their finding, unless there is an entire failure of proof, or the evidence on the part of the State is of such a weak or flimsy character as to authorize the inference that the finding was the result of passion, prejudice or mistake.   State v. Howell, 100 Mo. 628; State v. Grimes, 101 Mo. 188; State v. Hicks, 92 Mo. 431.

GANTT, J.—This is a prosecution commenced on the 13th of November, 1905, by the prosecuting attorney of Reynolds county, Missouri, in which he charged the defendant with feloniously, willfully and maliciously killing a bull calf, the property of Belle Dunn, at said county of Reynolds on the 7th of November, 1905.

The defendant was tried before a jury on the 29th day of May, 1906, and found guilty, and his punishment assessed at a fine of fifty dollars.   His motions for new trial and in arrest of judgment were overruled and he appealed to the St. Louis Court of Appeals, and that court has transferred the cause to this court because the prosecution is for violation of sec-

tion 1987, Revised Statutes 1899, which is a felony under said section. As it is the contention of the defendant that the evidence was wholly insufficient to sustain the verdict, it will be necessary to make a somewhat full statement of the testimony.

Mrs. Belle Dunn testified that she was the owner of the calf alleged to have been shot and killed by the defendant. She was the step-mother of the wife of the defendant, and on the day that the calf was killed, she was occupying a portion of the same farm on which defendant was living. The defendant had leased the farm from her husband before he died in the previous spring. She testified that about a week before the calf was killed, the defendant said to her he would kill her calves if they were not taken out of his field. On November 8, 1905, the calf mentioned in the information was found dead in the field occupied by the defendant, having been shot with a shotgun.

Myers, a witness for the State, testified that on the evening of November 7, 1905, when the witness was about a quarter of a mile from the house of the defendant and traveling in the direction of the house, he heard the report of a gun, which he judged to be a shotgun, in the direction of the field of the defendant where the calf was found dead the following morning. The witness drove on up to the house of the defendant and stopped and talked to the defendant, and in that conversation, the defendant said he had been out in his field, the same in which the calf was killed, and had been driving Belle Dunn's calves out of his corn, and had just returned. This was about sundown of that day.

H. L. Fitz, the officer who arrested the defendant, testified that when he arrested the defendant he said that he told the woman he would kill the calf if she did not take it out of the corn, and that he had taken

his calf out and wanted her to take hers out. At first he said he did not kill the calf, but he told her he would kill it if she did not take it out of his corn, that he had just told her that to give her a scare so she would take it out.

William Turner, who kept a store near the farm of the defendant, testified that he purchased a fresh hide of a calf from Mrs. Dunn about the time the calf was alleged to have been killed, and it looked as if it had a hand full of shot scattered over it.

The defendant testified in his own behalf and denied the killing of the calf. Admitted that he had a conversation with the witness Myers at his home on the farm on the evening on which the calf is alleged to have beeen killed, and that Myers was at his house late that afternoon. He stated that he had returned to his home from his father's about four o'clock in the afternoon, and went down to Turner's store for a little while, and then went over across the creek into the cornfield to get some fodder to feed his horses. He denied making the statement to the witness Myers to the effect that he had been down driving Mrs. Dunn's calves out of his field. He testified further that if he made the statements attributed to him by Mrs. Dunn and Mr. Fitz, he had no recollection of them.

Mrs. Nora Barton, the wife of the defendant, testified that after their arrival at home that afternoon, the defendant was not out of her sight during the afternoon and was not away during the night, and that the defendant did not have his gun out of the house that afternoon; that she went with him to the field where they got the fodder and fed the team; that they did not take any gun with them, and she neither saw any calves or calf that afternoon, nor heard any shot fired.

There was evidence also on the part of the defend-

ant tending to impeach the character of Mrs. Dunn for chastity and veracity, but it would seem that the most of this unfavorable reputation had grown out of a suspicion that she had not been married to Mr. Dunn, but it further appeared that Mr. Turner had written to the recorder in St. Francois county and ascertained that the marriage certificate was duly recorded in said county. Practically all the evidence tended to show that there was no cause whatever to impeach her character after her marriage to Mr. Dunn. On the part of the State an attempt was also made to impeach the character of the defendant, but this resulted merely in showing a bad reputation for quarrelsomeness rather than for truth and veracity.

I.    It was for the jury to pass upon the weight of the evidence, and this court will not disturb their finding unless there is entire failure of proof, or the evidence on the part of the State is of such a flimsy character as to authorize the inference that the finding was the result of passion, prejudice or mistake. That the calf was killed in the field of the appellant, and was shot with a shotgun, there is practically no dispute.    There is not the least evidence tending to show that the owner herself had killed it, or any suggestion that any other person had a motive for killing the calf except the defendant.    The evidence shows that the defendant had threatened to kill the calf if it was not taken out of his cornfield, and that he was at home on his premises that afternoon was established by his own evidence.    The witness Myers testified that he heard a shot that afternoon down in the field where the calves were feeding, and soon thereafter he drove up to the defendant's house, and the defendant stated to him that he had just been down in the field driving Mrs. Dunn's calves out.    It is true the defendant denies the killing of the calf and his wife

214 Sup.—21

State v. Barton.

testified that he did not have the gun when he was down in the field that afternoon, but the weight of this evidence on both sides was a matter for the jury, and we think the jury were authorized, if they believed the evidence for the State, to find that the defendant killed the calf.

II.    The court in its instructions, among others, gave the following:

"You are further instructed that one of the defenses interposed by the defendant is what is known as an alibi, by which is meant a claim on his part that he was at another and different place than that at which the *alleged* crime was committed, at the time when it was in fact committed.    And in that connection, you are instructed that if you have reasonable doubt of the presence of the defendant at the time and place where said crime was committed, you will acquit him, but you are instructed that a reasonable doubt by you of the defendant having been present at the time and place where said crime was committed to authorize you to acquit him on the ground of your having such reasonable doubt should be a substantial doubt by you of the defendant having been present at the time and place where such crime was committed and not a mere possibility that he may have been at another and different place than that at which said crime was committed at the time when it was committed."

The defendant complains of this instruction that it in effect tells the jury that unless they have a reasonable doubt of the appellant having been present at the time and place where the calf was killed, they will find him guilty without requiring them to find that a crime had been committed, or if committed that the appellant committed it.    We think this is a hypercritical objection.    While it is true, it would have been better if the court had modified the instruction with a phrase, "If such offense had been committed by any

one,". when all the instructions are read together, as they must be, it is plain that the court required the jury to find beyond a reasonable doubt that the defendant committed the offense, and it was not an assumption that the defendant did in fact commit the offense, unless the jury could find that he was absent at the time. [State v. McGinnis, 158 Mo. 1. c. 122, 123; State v. Hale, 156 Mo. 102.] We do not think that the giving of this instruction would justify the reversal of the judgment.

III. The defendant requested the court "to instruct the jury that before they could convict on circumstantial evidence alone, such circumstance should be so strong as to exclude every other reasonable hypothesis than defendant's guilt, and must be consistent with defendant's guilt." There was no direct evidence that the defendant shot and killed the calf, but the State's case consisted of circumstances strongly tending to prove that fact. In State v. Moxley, 102 Mo. 1. c. 388, a similar instruction was requested and refused by the court, and this court held that the refusal was reversible error. The proposition announced in the instruction is one long recognized in the administration of criminal law, and one to which the defendant was clearly entitled. [State v. Woolard, 111 Mo. 248.] The instruction is not a model by any means, but the principle having been expressly invoked by the defendant, the circuit court should have given a correct instruction on this point. [State v. Clark, 147 Mo. 20; State v. Taylor, 118 Mo. 153.] The defendant was convicted of a felony upon circumstantial evidence alone, and we think that the refusal to give this instruction to which he was clearly entitled constituted reversible error, and for this error the judgment must be and is reversed and the cause remanded for a new trial.

*Fox, P. J.,* and *Burgess, J.,* concur.