STATE v. CHARLES HUBBARD, Appellant.—No. 38382.—171 S. W. (2d) 701.

Division Two, June 7, 1943.

*I. Joel Wilson* for appellant.

*Roy McKittrick*, Attorney General, and *L. I. Morris*, Assistant Attorney General, for respondent.

BARRETT, C.—A jury found Charles Hubbard guilty of murder in the first degree in killing Mae Bell Cunningham and assessed his punishment at death.

Independently of Hubbard's confession the state's evidence established these facts: In October, 1940, Mae Bell and her husband left their home in Kansas City and went to her brother's, Wash Sowell's, in St. Louis. The husband returned to Kansas City the next day and his wife remained in St. Louis, making her home at 3419 Market Street with her brother and his wife. Although Mae Bell's husband came to St. Louis with her and wrote to her and on at least two occasions sent her small sums of money they seem to have had some domestic difficulties. She obtained employment in a laundry and worked until the latter part of December, 1940, when, for some undisclosed reason, she lost her job.

The Sowells lived in a three room, second floor, apartment. Mae Bell slept in the front or living room on a small day bed. Sowell and his wife slept in the middle room which was furnished as a bedroom. Off the middle room and back of it was a bathroom and a kitchen. The entrance to the apartment from the upstairs hall was through the middle room. The Sowells had two keys to that door. There was also an entrance through the kitchen from the back but that door was kept locked from the inside and there were no keys to it. Charles Hubbard lived in the downstairs apartment with his aunt, Bessie Hester. After Mae Bell came to live with the Sowells he made a fourth at cards in their apartment almost every night. Sometimes, after the Sowells went to bed Charles and Mae Bell sat up and talked and laughed and they considered him as Mae Bell's "boy friend" although they had no personal knowledge of any intimate relationship between them. Shortly before January 9th Louis Hand came to see Mae Bell three times but the Sowells did not know whether he too was her "boy friend."

On the morning of January 9, 1941, Wash Sowell left home at 6:15 and went to his work at the Swift Packing Company. His wife, Mary, left at 7:05 to work in a laundry. When she left Mae Bell was sitting on the edge of the bed dressed in her nightgown. Mary left her key with Mae Bell and when she returned from work about 5:40 in the afternoon rang the bell at the front of the stairs, expecting Mae Bell to admit her. [703] She rang the bell four or five times but got no response. As she rang Bessie Hester appeared and inquired whether she could get in and Bessie rang the bell. About that time Hubbard came out of the Hester apartment and Mary asked him whether he had been in the basement and he said: "No, I been gone all day. I just got in myself." Mary went to the top of the stairs and after "trying the door knob" sat down at the top of the stairs and waited for someone to unlock the door. After a few minutes she heard her husband at the back door. Shortly he came up the front

146

stairs with an insurance man. He unlocked the door but there was something against it so he pushed on the door and stepped in sideways. When the three of them entered Mae Bell was lying on the floor in a pool of blood, dead with a great gash slashed in the left side of her throat, a "straight edge" razor half open near her right arm. Mary screamed and ran downstairs to Bessie's apartment and reported the death. Hubbard gave her some water and then went up to the apartment. Wash directed him to call the police and he left. That night the Sowell's stayed in Bessie's apartment and Wash slept with Hubbard.

The police photographs, as well as the oral testimony, present a gruesome picture. Mae Bell and her gown were covered with blood. There was blood all over the place, in the kitchen four or five feet up on the walls, all over the rugs and furniture. Her bed was bloody and there was a long slash cut in her pillow. The cut on the left side of her neck extended from below her left ear down to the middle of her throat and through the jugular vein and windpipe.

A specimen of her blood was examined and found to be type "O." Spots on Hubbard's shoes, trousers and socks were examined by a pathologist and found to be human blood, type "O." The razor belonged to Wash Sowell. It was bloodstained and the blood on it was type "O."

Charles Hubbard was present when the police arrived on January 9th and they talked to him casually the following day and he suggested that her husband in Kansas City may have killed her. By Sunday, January 12th, the police had heard that Mae Bell and Charles had been "sweethearts" and they arrested him. He then told the police that they were just friends and neighbors. He played cards with her and the Sowells, ran errands for her and for them but denied that he and Mae Bell had established any intimate relationship. He claimed that he left home about 6:30 on the morning of the 9th and went to the American Car & Foundry Company to apply for work. He left there about 10:30 and went to his cousin's, Arnecia Brown's, on Barry Street and stayed there for late afternoon dinner and Brown took him home about 5:00 o'clock. When he got to Brown's, Arnecia's wife, Jessie, was there and their daughter, Mary Ella, was sick in bed. Arnecia came home from work sometime after noon.

But, the police say he changed his story on January 15th. While they were questioning him they confronted him with the fact that the stains on his clothes were blood and not paint and he asked to be returned to his cell. Officer Lower, "Shadow" to the defendant and the negroes in the neighborhood, went to his cell with him and after a short time Hubbard admitted that he killed "the girl." He then went into great detail describing the events of the day and the murder, even saying that he did not need to take a weapon along

when he went to her apartment because he knew where Sowell's razor was. He demonstrated on Lower how he had slashed her throat. He repeated his story to the officers and finally a written "statement" was taken. He could sign ("scrumble") his name but could neither read nor write. In the statement he said he was forty-one years of age, that on the morning of January 9th he left home about 6:30 and went to the American Car & Foundry Company to look for a job. He left there about a quarter to eleven and went to his cousin's on Barry Street where he stayed about fifteen minutes, telling them he was going to Lucille's house but instead he went home. He took off his overalls and work shoes and went upstairs to see Mae Bell. After he killed her he returned to his cousin's where he stayed until four o'clock when Brown brought him home. He stopped at Mary Guss's house and told them he was going home and build a fire for his "auntie." He said that he and Mae Bell had been "sweethearts" for four months but that she was quitting him on account of another fellow she was going with by the name of Louis Hand. He was going to try and get her to "make up" and if she didn't he intended to kill her. He said he knocked on the door and Mae Bell let him in. He sat on the edge of her bed. "We came to talking. I asked her if she was still remaining on or [704] does she quit? She says yes, she quit." At her suggestion they embraced and he again asked her if she was going to quit him. Meanwhile he had gone to the bathroom and put Sowell's razor in his pocket. When she again stated that she didn't love anyone and that they were through he pushed her head back with his right hand and slashed her throat with the razor. She ran around through the house and finally fell in the middle room.

When he was tried he repudiated the statement, admitting he said some of the things contained in it but claimed that it was obtained by force and brutal treatment at the hands of the police without which he would not have made a statement. His defense was an alibi. He and the three Browns testified to the first story he gave the police. According to their evidence he was in their home at the time Mae Bell was murdered.

The court gave the usual cautionary instructions and instructed on both first and second degree murder. On this appeal his briefed assignments of error are that the corpus delicti was not established, independently of his confession, and, therefore, the confession was inadmissible and error in giving instructions 3, 4 and 9.

Instruction No. 3 is a circumstantial evidence instruction; undoubtedly thought warranted because of the evidence relating to the spots on Hubbard's clothes. It is general in its nature but differs from most circumstantial evidence instructions in that it uses the word "positive" rather than the commonly used word "direct" evidence. It says: "The Court instructs the jury that the State is not bound

to prove its case by *positive* evidence; that is, by the testimony of a witness or witnesses who saw the act committed and identify the defendant," etc. The objection is that the word "positive" permits a finding of guilt "upon evidence which falls short of proof of guilt beyond a reasonable doubt" because it takes "positive evidence to be beyond a reasonable doubt." In support of his contention the defendant relies on State v. Walser, 318 Mo. 833, 1 S. W. (2d) 147, in which it was held error to refuse the defendant's instruction to the effect that "the evidence, to justify a conviction must be positive, convincing, establishing the defendant guilty of the charge contained in the indictment beyond a reasonable doubt", etc. But, that was a prosecution under a positive statute (now repealed Laws Mo. 1931, p. 201) for receiving deposits in a bank knowing it to be insolvent. It was not a circumstantial evidence case and a similar instruction had previously been held proper in such a case. See also State v. Thompson, 333 Mo. 1069, 64 S. W. (2d) 277.

A circumstantial evidence instruction does not consist of an exact formula and certain, definite terminology is not required. State v. Conway, 348 Mo. 580, 154 S. W. (2d) 128; State v. Moxley, 102 Mo. 374, 14 S. W. 969. Neither is it possible or necessary to attempt to define and delimit the quantity and quality of the evidence necessary to make a circumstantial evidence case. State v. Concelia, 250 Mo. 411, 157 S. W. 778; State v. Hancock, 340 Mo. 918, 104 S. W. (2d) 241. It is true that most instructions on circumstantial evidence use the word "direct" in the place of and instead of the word "positive" in instruction No. 3. State v. Shelton, 223 Mo. 118, 137, 122 S. W. 732; State v. Blankenship, 330 Mo. 792, 50 S. W. (2d) 1024; State v. Gatlin, 170 Mo. 354, 70 S. W. 885. This instruction tells the jury that "positive" evidence is testimony from an eyewitness, one with first hand personal knowledge. The word is not used in the sense of or descriptive of the burden of proof or of the persuasibility and convincibility of evidence. In this instruction "positive" is used as a synonym for "direct." It defines and distinguishes circumstantial evidence from "direct and positive evidence, which is evidence communicated by those who have actual knowledge by means of their senses, and requiring an eyewitness." Rollins v. Business Men's Acc. Ass'n. of America, 204 Mo. App. 679, 220 S. W. 1022; 33 Words & Phrases, p. 57. While "direct" may have been the precise word "positive" did not make it subject to the interpretation the defendant places on it.

Assuming the confession properly admissible, and its admissibility is not challenged, there was "positive" or "direct" evidence and the state was not in the position of having to rely solely or substantially on circumstantial evidence and it is doubtful that such an instruction was required at all. State v. Robinson, 117 Mo. 649, 23 S. W. 1066; State v. Judge, 315 Mo. 156, 285 S. W. 718; State v. Gadwood, 342

Mo. 466, 116 S. W. (2d) 42; State v. Tucker, 339 Mo. 101, 96 S. W. (2d) 21. At least, the instruction is not erroneous for the reason assigned.

 The defendant does not now claim that his confession was obtained by force and was, therefore, inadmissible but argues that there was no proof of the corpus delicti independently of the confession and for that reason his confession was not admissible. The gist of his argument is that the evidence, aside from his confession, does not show a homicide. On the contrary he says the evidence is just as consistent with suicide. There can be no question but that the burden was on the state to establish the defendant's guilt and every element of the offense (16 C. J., Secs. 993, 1000), including the corpus delicti or that a crime had been committed by someone. 16 C. J., Sec. 994. In this case to prove the corpus delicti it was incumbent on the state to show a death caused by the criminal agency of someone other than the deceased. State v. Meadows, 330 Mo. 1020, 51 S. W. (2d) 1033; State v. Joy, 315 Mo. 7, 285 S. W. 489. It is for that reason we have previously set forth the gruesome description of the condition of the apartment and the nature and extent of Mae Bell's wounds. They clearly and plainly demonstrate a violent and brutal homicide. There is not the slightest indication of suicide in this case. The facts and circumstances, independently of the confession, clearly prove a horrible murder. State v. Crabtree, 170 Mo. 642, 71 S. W. 127; State v. Mabry, 324 Mo. 239, 22 S. W. (2d) 639. Once evidence other than the defendant's confession shows that the specific crime charged was committed (here, murder) by someone, then the defendant's confession is admissible. (if voluntary) and, of course, if believed completes the case. State v. Hawkins (Mo.), 165 S. W. (2d) 644; State v. Gibilterra, 342 Mo. 577, 116 S. W. (2d) 88; State v. Hoskins, 327 Mo. 313, 36 S. W. (2d) 909; State v. Williamson, 339 Mo. 1038, 99 S. W. (2d) 76.

██ Instruction No. 4 is a general instruction on confession. It states that a confession to be admissible must be voluntary and then defines "voluntary." The instruction then says that if the confession is voluntary "it is competent for the jury to consider it and give it such weight as they see fit" considering the circumstances surrounding the party at the time it was made. It concludes by saying: "If, however, the jury believe that said confession was not voluntarily made, or at the time said alleged confession was made, *if you find it was made*, was made by defendant on account of threats or fear or in the hope of escaping punishment, then the jury should disregard said confession so made in arriving at their verdict." The defendant's objection to the instruction is that it is a general abstract statement of law without any direction as to how it is applicable to the defendant or stating that it is inapplicable to him unless and until they shall have determined "(a) that the defendant had actually made the

alleged confession . . . ; (b) that it had been freely and voluntarily made by him; (c) that what was said therein was true."

As we have said, the defendant, in effect, repudiated the written statement and denied the oral admissions testified to by the officers. The court followed the procedure indicated in State v. Gibilterra, supra, and State v. Di Stefano (Mo.), 152 S. W. (2d) 20 and determined as a preliminary matter that his statements or confessions were voluntary. He then submitted the same question to the jury. Annotation 85 A. L. R. 870; 3 Wigmore, Evidence, Sec. 861. In the first place it is apparent from the quoted part of the instruction that the defendant's objections are without merit. Plainly the instruction required the jury to find the confession to have been made. They were not only to consider the circumstances and give it "such weight as they saw fit" but the instruction says "if you find it was made." The final and determinative test is whether the confession was *voluntary* and the jury were fully and completely given the rules by which they were to examine the evidence before them and determine that vital fact even though the court was not bound to define the term "voluntary" as it did. State v. Gibilterra, supra; State v. Pillow, 169 S. W. (2d) 414; State v. Hershon, 329 Mo. 469, 45 S. W. (2d) 60. An instruction pertaining to confession should not assume any fact regarding it about which there is a controverted issue (23 C. J. S., Sec. 1166) and we are unable to see that this one does. Neither should such an instruction comment on the evidence (23 C. J. S., Sec. 1165) and this one does not. It is not subject to the vices found in the instructions in State v. Schnurr, 285 Mo. 74, 225 S. W. 678; State v. Thomas, 250 Mo. 189, 157 [706] S. W. 330; State v. Hersh (Mo.), 296 S. W. 433 and State v. Duncan, 336 Mo. 600, 80 S. W. (2d) 147.

The defendant urges that instruction No. 9 is prejudicially erroneous because it shifts or places the burden of proof as to alibi on him. He says the instruction tells the jury that he must prove his alibi when the fact is that it was the state's burden to prove every essential element of the crime beyond a reasonable doubt, including the fact of the defendant's presence. In his motion for a new trial defendant quotes part of the instruction and states that the effect of it is to shift the burden of proof from the state to the defendant and further that the quoted sentences erroneously limit the evidence of alibi to be considered by the jury to such evidence as the defendant may have submitted on that question, thus depriving him of any evidence on the part of the state tending to show an alibi. The state takes the position that substantially similar instructions have been approved and that this one correctly states the law. The introductory sentence of the state's brief says: "The court properly instructed the jury in its instruction No. 9, *requiring the defendant to prove alibi, to entitle him to an acquittal.*"

We have numbered the sentences of the instruction which is as fol-. lows:

"(1) Where a person on trial for a crime shows that he was in another place at the time when the act was committed, he is said to prove an alibi. (2) One of the defenses interposed by the defendant in this case is what is known as an alibi; that is, the defendant was at another place at the time of the commission of the crime. (3) The Court instructs the jury that such defense is as proper and as legitimate, *if proved,* as another, and all evidence bearing upon that should be considered by the jury. (4) If, in view of all the evidence, the jury have a reasonable doubt as to whether the defendant was in some other place when the crime was committed, they should give the defendant the benefit of the doubt, and find him not guilty. (5) As regards the defense of an alibi, the jury are instructed that the defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal; it is sufficient if the defense upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged."

The word "alibi" means "elsewhere; in another place." Webster's New International Dictionary. Obviously, if the charge and the nature of the offense is such as to require the defendant's presence at the scene of the crime and he was in fact elsewhere at the time it would be impossible that he could be guilty. In such instances it is necessary and essential that the evidence place the defendant in such proximity of time and place as to have been in a position to commit the crime charged. 22 C. J. S., Secs. 40, 574. Strictly speaking, therefore, alibi is not an affirmative defense even though from an evidential standpoint it may be defensive in nature. 15 Am. Jur., Sec. 315; 1 Wharton, Criminal Law, Sec. 381; State v. Hale, 156 Mo. 102, 56 S. W. 881. Although this is the majority view and the general rule, there are jurisdictions which hold to the contrary and though such a question was not involved there are at least two cases in Missouri stating that alibi is an affirmative defense. See State v. Cardwell, 312 Mo. 140, 279 S. W. 99 and State v. Wilson, 321 Mo. 564, 12 S. W. (2d) 445 and Judge Ellison's comment in State v. Bagby, 338 Mo. 951, 966, 93 S. W. (2d) 241 that in citing them it was not to be understood that the court was subscribing to that view. "As already indicated, the confusion arising with respect to the present question seems to be due largely to the tendency on the part of the courts to regard alibi as an affirmative defense, like insanity, and to consider evidence to prove an alibi in the same light as they would evidence offered in support of such defenses. Some courts, however, have pointed out the fallacy of this position, and expressly assented to the true rule that alibi is not an affirmative defense, and that evidence to prove the same is not to be treated as proof offered to establish an independent, affirmative matter set up by the defendant,

*but* merely *evidence tending to disprove one of the essential factors in the case of the prosecution, viz., presence of the defendant at the time and place of the alleged crime."* Annotation 29 A. L. R. 1127, 1139; 67 A. L. R. 138, 141; 124 A. L. R. 471, 474.

This phase of the matter is important in this case because if alibi is an affirmative defense it might well be that the burden would be upon the defendant to prove it. And, the fact of the matter is that was once the rule applied by this court. In State v. Jennings, 81 Mo. 185, a [707] larceny case, the state sought to establish the guilt of the defendant by showing that he was seen in Warrensburg about 8 o'clock and its evidence tended to establish that fact. "On the other hand, the evidence introduced by the defendant, tended to show that at the very same time the State's witnesses said defendant was in Warrensburg, he was at another place, twenty odd miles distant . . . ." The court, with such a record before it, said: "The requirement that the alibi relied on should be made out to the satisfaction of the jury was fair to defendant; the burden of establishing it rested upon him . . . ." This case was expressly overruled in State v. Howell, 100 Mo. 628, 14 S. W. 4 and State v. Taylor, 118 Mo. 153, 24 S. W. 449. In the latter case, 118 Mo. l. c. 166, 168 and 170 the court made these observations:

"But, notwithstanding the popular prejudice against the plea and notwithstanding the satire of novelists and essayists, . . . in the very nature of the criminal prosecution, it is a legitimate defense and it flows naturally from the rule that requires the state to establish the guilt of the accused beyond a reasonable doubt. In every criminal prosecution the state assumes to show as an essential element in his guilt, the presence of the defendant at the commission of the crime. This being true, a simple plea of not guilty, without other further plea, puts the state to the proof of his presence. If the state fails to show that the defendant was present when the crime was committed, when, without his presence, it is impossible for him to be guilty, the prosecution must fail. . . .

"We are aware that some courts have required the defendant to establish his alibi by a preponderance of the evidence; but, in our opinion, such a rule is contrary to the presumption of innocence, to which every defendant is entitled in a criminal prosecution, *and to the rule that requires the state to establish his guilt beyond a reasonable doubt. The burden is on the state and must remain on it throughout the trial.* . . .

"Adhering, then, to the rule that the accused is entitled to an acquittal if the evidence as to alibi raises a reasonable doubt in the minds of the jury, was there error in the giving and refusal of instructions?"

Those cases have been followed ever since and the general rule is that the state has the burden of proving the presence of the accused at the time and place of the crime when that fact is essential to his

guilt and "It is a prisoner's burden, the only burden ever put upon him by the law, that of satisfying the jury that there is a reasonable doubt of his guilt." Thayer, Preliminary Treatise on Evidence, p. 364n. "If the defendant's evidence is sufficient to raise a reasonable doubt, or if the state's evidence is so defective as to raise a reasonable doubt, or if, taking all the evidence on both sides, there is a reasonable doubt, of the defendant's guilt, he is entitled to an acquittal." State v. Woolard, 111 Mo. 248, 256, 20 S. W. 27; State v. Prunty, 276 Mo. 359, 208 S. W. 91. It is unnecessary to cite all the Missouri cases as they are listed in the following annotations: 29 A. L. R. 1127; 67 A. L. R. 138 and 124 A. L. R. 471. (On the duty of the court to instruct on the subject of alibi in the absence of a request by the defendant, a question not involved here, see and compare State v. Taylor, supra, and State v. Bagby, supra, and the lists of Missouri cases in the annotations in 118 A. L. R. 1303.)

Consequently, when instructions pertaining to alibi are given they should not place the burden of proving the alibi on the defendant. "Under this view of the law the court clearly erred in instructing on that question, as by the instruction given the burden was cast on the defendant to establish his alibi, when it should have told the jury if they had a reasonable doubt of his presence at the time when, and place where, the hay was fired, they would acquit." State v. Harvey, 131 Mo. 339, 347, 32 S. W. 1110; State v. Tatlow, 136 Mo. 678, 38 S. W. 552; State v. Kelly, 16 Mo. App. 213.

Several types of instructions on alibi and what they may or should contain and which have been held to sufficiently or properly cover the subject have been approved or held not to be erroneous and the state contends that instruction No. 9 falls within these cases. There is a short form instruction embodying the essentials and the idea expressed in the fourth sentence of instruction No. 9. "Unless you find and believe from all the facts and circumstances given in evidence the presence of defendant at the place of the alleged assault, and his guilt beyond a reasonable doubt, you should acquit." This instruction is from State v. Sanders, 106 Mo. 188, [708] 195-196, 17 S. W. 223 and was held to be sufficient in that and the following cases: State v. Shelton, 223 Mo. 118, 137, 122 S. W. 732; State v. Peters (Mo.), 123 S. W. (2d) 34, 37; State v. Nasello, 325 Mo. 442, 30 S. W. (2d) 132. A somewhat similar instruction was approved in State v. Pope, 338 Mo. 919, 92 S. W. (2d) 904. There is a longer form, though no plainer in its directions, taken from State v. Bryant, 134 Mo. 246, 252, 35 S. W. 597 and the same or a substantially similar instruction was approved in State v. Hale, 156 Mo. 102, 106, 56 S. W. 881; State v. Bateman, 196 Mo. 35, 39, 95 S. W. 413; State v. Glasscock, 232 Mo. 278, 294-295, 134 S. W. 549. Then there is a miscellaneous group of cases holding variegated instructions on the subject not erroneous. State v. Berkowitz, 325 Mo. 519, 29 S. W. (2d) 150; State v. Grant

(Mo.), 98 S. W. (2d) 761. Again, no effort is made to collect and cite all the Missouri cases but these indicate the principles and all of them demonstrate the correct rule that the burden is on the state to prove the defendant's presence and his guilt under all the evidence beyond a reasonable doubt and if the jury has any doubt as to whether the defendant was present they should acquit.

The problem in this case is whether instruction No. 9 violates the indicated principles and especially whether it shifts or unjustly places upon the defendant the burden of proving an alibi or, as stated in the defendant's motion for a new trial, whether the jury is confined to his evidence in that regard, thus depriving him of the right to have the jury consider all the evidence in the case and acquit him if they have any doubt from any and all the evidence. Clearly, instruction No. 9 is not similar to any of the instructions in the cases cited above. In the first place, none of those instructions contain the phrase in the third sentence, "if proved." As we have indicated, the fourth sentence more correctly states the law of alibi. But the fifth sentence continues and says "the defendant is not required to prove that defense beyond a reasonable doubt" etc.

Though the case is not cited by either the state or the defendant and appears to have been overlooked by the annotators on this point, the instruction is an exact duplication of the one in State v. McGinnis, 158 Mo. 105, 122-123, 59 S. W. 83 and, though not set out in the opinion, the original record shows it to have been used in State v. Shafer (Mo.), 108 S. W. (2d) 360. In both those cases the instruction was said to be an incorrect statement of the law, but the error was held to be harmless. In State v. McGinnis the court said this of the instruction, l. c. 123-124:

"It is challenged because the court used the phrase, 'if proved.' The language is most unfortunate and was criticised by this court in State v. Taylor, . . .

"Evidently, the criticism of the instruction has been overlooked and in future its seeming inconsistencies should be avoided. *The words 'if proved,' have no place in the instruction, neither should the jury be told that defendant is not required to prove his alibi beyond a reasonable doubt.* No State requires that."

Aside from the Shafer case the McGinnis case was cited in State v. Davis, 186 Mo. 533, 539, 85 S. W. 354, 356; State v. Barton, 214 Mo. 316, 113 S. W. 1111; State v. Brown, 247 Mo. 715, 153 S. W. 1027, and State v. Anglin (Mo.), 222 S. W. 776, but in none of those cases was the criticized language used and in the Anglin case it was specifically pointed out that the instruction in the McGinnis case "was justly criticized." Furthermore, the court said this of the language in the third sentence of instruction No. 9: "But not in that case, nor in any other within our knowledge, was it held necessary to instruct the jury in so many words that an alibi is a legitimate defense."

In the McGinnis case the criticisms of the instruction are not analyzed, although the court sets forth the statement from State v. Harvey, supra, to the effect that if from any of the evidence the jury have a reasonable doubt of the defendant's presence at the time and place they should acquit him. The fundamental reason such an instruction is an incorrect statement of the law is that it tends to cast upon the defendant the burden of proving alibi when as we have shown there is no such burden upon him. Annotations 29 A. L. R. 1127, 1150; 67 A. L. R. 138, 146; 124 A. L. R. 471, 479. The defendant is not only "not required to prove that defense beyond a reasonable doubt," as the fifth line of instruction No. 9 says, but he is not required to prove it at all or in any degree. If there is any evidence which raises a doubt in the jury's mind as to his presence he is entitled to an acquittal. State v. Howell, supra; State v. Taylor, supra.

The fundamental principle involved in this case was properly handled and decided with reference to other subjects in State v. Strawther, 342 Mo. 618, 116 S. W. (2d) 133, 120 A. L. R. 583, and State v. Malone, 327 Mo. 1217, 39 S. W. (2d) 786. In the Malone case the jury was informed "that the burden of proving that he acted in self-defense rests upon the defendant, Johnny Malone, and not upon the State . . ." Of this instruction Judge COOLEY said, l. c. 1228: "*The burden is not upon the defendant in a criminal case to prove his innocence, but upon the State to prove his guilt.* Where the charge is murder, proving guilt includes proving that the homicide was committed with malice, which is an essential element of murder. . . . The State charges that it was malicious, in other words not justifiable, which must be proved to make out the offense charged. *The defendant is presumed to be innocent of the crime charged until proven guilty, yet by this instruction an essential element of the offense is assumed to exist unless defendant successfully carries the burden of proving by a preponderance of the evidence that it does not exist,* . . . The concluding sentence to the effect that if there is reasonable doubt of defendant's guilt he should be acquitted does not cure the fundamental error of telling the jury in clear and positive terms that the burden of proving to their satisfaction that he acted in self-defense rests upon the defendant. . . . But the burden of establishing defendant's guilt rests with the State, does not shift, and when the proof is all in the final question for the jury is, are all essential averments of the indictment proved beyond a reasonable doubt?"

In the Strawther case the jury was told that "*the burden of proving circumstances of mitigation or justification,* if not shown by the testimony offered by the State, *is upon the defendant.*" Judge LEEDY cited State v. Howell, supra, and followed the views expressed in the Malone case. He said, l. c. 628: "Apart from the fundamental error

of shifting the burden of proof to defendant, the instruction in the Malone case was also held bad because it was confusing.''

There is no difference in principle in those cases and this case. It might be that if the instruction had been drawn as to clearly tell the jury that the burden was upon the state to prove the defendant's guilt and his presence at the scene of the crime beyond a reasonable doubt the misdirection in instruction No. 9 could be held to be harmless. Annotation to State v. Strawther, 120 A. L. R. 591. But nowhere in the instruction is the jury informed of the state's burden. Aside from the misdirection the instruction is confusing if not contradictory. In the second sentence they are told that an alibi is a good defense ''if proved,'' thereby indicating that the defendant has the burden of proving it. If that phrase does not place the burden on him the fifth sentence does when it tells the jury that he does not have to prove the defense beyond a reasonable doubt but that it is sufficient if ''the defense upon that point'' raises a reasonable doubt.

The instruction is reasonably subject to the criticism that it limits the jury to a consideration of evidence offered by the defendant tending to show alibi. The officers in making the state's case testified that after Hubbard was arrested he told them that he left home early in the morning and went to the American Car & Foundry Company, leaving there about 10:30 and going to his cousin's on Barry Street where he remained throughout the day and until he was taken home near five o'clock. On the trial three of his witnesses testified to these facts, as he did after repudiating his confession. He was entitled to an instruction which did not place upon him the burden of proving an alibi and which correctly and clearly told the jury that unless they found and believed from all the facts and circumstances given in evidence the presence of the defendant at the place of the alleged crime and his guilt beyond a reasonable doubt they should acquit him.

The instruction is not only subject to the criticisms set forth in the McGinnis case from which it came but in addition to its being a positive misstatement of the law it is also so confusing, misleading and contradictory as to be impossible of facile use and understanding by a jury. The approval of such an instruction nullifies positive rules of criminal law, and fundamentals at that, and to say that its use is harmless or nonprejudicial error, as the McGinnis and Shafer cases do, is an inconsistency in a matter of principle.

Because of the error in instruction No. 9 the judgment is reversed and the cause remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Barrett, C., is adopted as the opinion of the court. All the judges concur.