**STATE of Missouri, Respondent,**

v.

**Wendell WILLIAMS, Appellant.**

**No. 52132.**

Supreme Court of Missouri,
Division No. 2.

July 10, 1967.

Norman H. Anderson, Atty. Gen., Donald L. Randolph, Asst. Atty. Gen., Jefferson City, for respondent.

J. Whitfield Moody, J. Arnot Hill, Kansas City, for appellant.

BARRETT, Commissioner.

Charged with burglary and stealing, a jury found the appellant, Wendell Williams, guilty of burglary only and fixed his punishment at two years' imprisonment.

At the close of the work day on March 11, 1965, the Southern Awning & Iron Works, 2320 E. 12th Street in Kansas City, was securely locked, all doors and windows closed. On the following morning, March 12, 1965, when the owner, Talbot, returned to the plant a section of wire glass near the door handle had been broken, there was a hole in the skylight and, finally, it was discovered that the outside guard across a fan in the paint room had been removed, a fan blade had been broken off making a "V hole" through which entry had been effectuated. In the office files had been emptied onto the floor, pictures disfigured,

an acetylene torch moved in, the safe turned over and "the front door of this safe was cut all the way around the seams." (In a vocational training school Williams, age 22, had had two courses in welding.) The office had been ransacked, a radio was missing, also $30 in change, $20 worth of stamps, flashlights, tools and twenty-one blank checks, all of the approximate value of $200.00. And most important here, a detective found a knife in the office and Williams' thumbprint was removed from the blade. Williams' explanation for this was that he was in the business of sharpening knives and some time or other may have repaired and sharpened that particular knife. Testifying in his own behalf, however, he denied that he had anything to do with the burglary and denied that he had admitted participation to anyone.

In the trial of his case Williams was represented by paid counsel of his own choosing and in this court is represented by counsel for the Legal Aid and Defender Society of Greater Kansas City. His counsel make four points, two relating to the instruction on voluntary confession, one relating to the "alleged confession" itself and the other that "the officer *did not make it clear to him* that he had a right to counsel during the interrogation" and did not warn that any statement he might make could be used against him and thereafter in permitting the officer to testify to an oral admission thereby infringing his rights guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States. (Emphasis supplied.) In support of his basic theory with respect to his right to counsel the appellant does not rely upon the recent in-custody interrogation decisions, instead he relies upon cases in which defendants were denied counsel in the actual trial of their cases or in which there was an improper appointment of counsel: Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70. As stated, the appellant here,

so the record recites, "appeared in person and by his counsel, Mr. Richard Kirwan" and Mr. Kirwan did in fact try the cause down to and including the sentencing and perfection of the appeal.

The question sought to be raised here, particularly with respect to any confession the appellant may have made arose in these circumstances: The state's second witness, after the owner of the burglarized premises, was Officer Halteman of "the crimes against property unit." After describing the premises the officer said, "I interviewed him in regard to burglaries which had occurred in the city." Defendant's counsel, evidently anticipating, objected to that particular statement and the trial court, out of the hearing of the jury, permitted counsel to examine the officer with respect to the circumstances in which he talked to and obtained an admission from Williams. It turned out that Williams was already in jail, having been arrested on April 12th for another burglary, the Patti Construction Company burglary, when on April 16 Halteman went to the jail and talked to him. Halteman said that he advised the appellant that he had a right "to talk to his folks or counsel" and he did not know at that time that he already had counsel. In the end, however, the officer said, "This burglary was already solved before I talked to him." In explanation he said, "Sometime in March the suspect, one of the suspects in this crime was arrested and later convicted, and the crime was automatically cleared by his arrest. We had a good case." In any event after counsel's original objection and preliminary examination of Halteman, there were no other witnesses as Halteman was alone when he interviewed Williams and neither Williams nor anyone else was called upon this motion which the court evidently treated as a motion to suppress, the court made this entry: "One more thing, just for the record, I am going to make a finding as a result of this hearing outside the presence of the jury that the alleged statements made by the defendant were made voluntarily be-

yond a reasonable doubt after being advised of his right to counsel" and he concluded that the issue would ultimately be submitted to the jury under appropriate instructions. Thus the trial court by a finding of fact "with unmistakable clarity" has determined that any statement Williams may have made "was freely and voluntarily given" (Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593) and therefore this appeal is not concerned with the problems of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The officer was then permitted to testify that "He stated he had participated in this burglary."

■ The other objection to this testimony concerning the appellant's admission is that "it was unsupported by evidence that no threats of harm or promises of wordly advantages were made to defendant." As indicated in considering the other assignment there was no such objection or claim—the only claim was that *there was no warning of his right to silence* and to counsel and therefore the admission was not voluntary. But even so, when Halteman conducted his interview he did not have Williams removed from his place of confinement but talked to him on the 11th floor where he was confined after advising him of his rights and the only fair conclusion from the circumstances is that there were no threats, promises or violence and no opportunity for violence and in view of the court's specific finding the supported inference is that there was no physical or mental coercion and "in the totality of the circumstances" the incriminating oral statement was admissible in evidence. State v. Beasley, Mo., 404 S.W.2d 689.

It is assigned that Instruction 9, submitting the voluntariness of any statements Williams may have made, was prejudicially erroneous in two respects, it did not require a finding that said admissions were true, and it failed to require a finding that the statements had been made without threats or promises. To establish his points that these are always and in every event essen-

tial elements of any and all instructions on voluntary statements the appellant cites, for example, State v. Williams, Mo., 369 S. W.2d 408, a rape-murder case. There, in the first place, the defendant did not testify and, in the second place "the issue of mental duress and coercion had to be decided in order to determine whether the confessions were or were not voluntarily given." Mental or psychological coercion was not mentioned, the instruction only submitted without "hope of leniency * * * and without anyone making any threat or doing any violence" and thus was prejudicially erroneous because "[i]n omitting to present the issue of mental duress and coercion for determination by the jury, the instruction was clearly erroneous and should not have been given." In further substantiation of his arguments the appellant, without reference to the particular language involved or the form of the instruction or the precise nature of the issues involved, cites cases involving instructions entirely dissimilar to the one involved here, for example again, an instruction "with reference to the paper offered in evidence" the jury was erroneously told that "it is a rule of law founded in reason that a confession of a defendant, when voluntarily made, is evidence against him, because common experience proves that a man will not without motive for so doing, confess facts to his disadvantage, unless they are true." Here, the truth of the confession being denied by the appellant, "it would surely be prejudicial to tell the jury it is 'a rule of law' that his confession was evidence against him without requiring the jury to find it was true; especially when this instruction went on to say it was evidence against him 'because common experience proves' he would not confess such facts 'unless they are true.'" State v. Cross, Mo., 357 S.W.2d 125, 127. Other forms of instructions submitting voluntariness of confessions are State v. Phillips, Mo., 299 S.W.2d 431, State v. Stidham, Mo., 305 S.W.2d 7, 17, State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701, and State v. Washington, Mo., 399 S.W.2d 109, which could only be applicable in cases of " 'the

police brutality began' and did not stop until he admitted the commission of the rape and the robbery and that 'it was very rough from the very first fist blow the police struck me'; that he signed statements admitting the crimes because there was no other way to stop the brutality to which he was being subjected." There was neither proof nor claim of mental duress in that case, the only theory of coercion was force. In short, those cases do not, as claimed here, make threats, promises or truth essential elements in every case concerned with the voluntariness of admissions or confessions.

■ As indicated, Instruction 9 is wholly unlike the instructions in any of the cases relied on by the parties, its origin has not been uncovered but an examination of the files reveals that it is identical with Instruction 7 in State v. McCollum, Mo., 377 S.W.2d 379, 388. This is the instruction in both cases:

"The Court instructs the jury that if you believe and find from the evidence that the defendant made any voluntary statement or statements in relation to the offense charged, after such offense is alleged to have been committed, you must consider such statement or statements, if any, all together and in the light of the circumstances under which you may believe they were made, (if you believe they were made).

"If you believe the statement or statements of the defendant, proved by the State, were not voluntary, then you should disregard the statement or statements entirely."

There is no specific reference in the instruction to either mental or physical coercion or to the truth of any admission the appellant may have made and yet any supported theory, either affirmatively or negatively, is open for argument. In the McCollum case the appellant offered and was complaining of the refusal of his instruction on fear and force but the court said, as is the fact here, "[t]here were no facts in evidence supporting such a submission." And there as here "[u]pon this record" the instruction was not manifestly prejudicial for the reasons now advanced.

Since the briefed assignments of error are not well taken the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.